634 A.2d 1099

**Gwendolyn JENKINS, Appellee,**

v.

**HOSPITAL OF the MEDICAL COLLEGE OF PENNSYLVANIA and Dr. Carol Grabowski and Dr. Dorothy M. Barbo, Appellants.**

Supreme Court of Pennsylvania.

Submitted Dec. 9, 1992.

Decided Dec. 8, 1993.

Nancy A. Nolan, Philadelphia, for appellants.

Mark Jurikson, Philadelphia, Calvin R. Koons, Sr. Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## *OPINION*

ZAPPALA, Justice.

This appeal raises the issue of the constitutionality of Section 8 of the Act of April 13, 1988, P.L. 336, No. 47, which provides for the retroactive application of 42 Pa.C.S.A. § 8305(a) to any case pending or on appeal on the effective date of the statute. The Superior Court held that the retroactive application of the statute was unconstitutional because the Legislature may not extinguish a cause of action which has accrued to a plaintiff. We affirm the order of the Superior Court.

On March 8, 1984, Appellee Gwendolyn Jenkins gave birth to a male child who suffers from Downs syndrome. She underwent a sterilization procedure immediately after the birth. She subsequently brought a civil action against the Hospital of the Medical College of Pennsylvania, Dr. Carol Grabowski, and Dr. Dorothy M. Barbo, to recover damages based on the alleged negligence of the medical providers during her pregnancy. The complaint asserted that the medical providers were negligent in failing to perform a diagnostic test for the presence of Downs syndrome within sufficient time for her to elect to terminate the pregnancy, and in failing to inform her that the child suffered from Downs syndrome before the sterilization procedure was performed.

In Count I of the complaint, Ms. Jenkins alleged that she sustained the following losses:

28. As a direct result of the injuries aforementioned and caused solely thereby, Plaintiff has suffered great physical and mental and emotional pain and will continue to

suffer such pain and anguish for an indefinite time into the future, all to her great detriment and loss.

29. As a direct result of the aforementioned injuries, Plaintiff has suffered a complete sterilization, which has left her unable to bear any further child [sic], all to her great detriment and loss.

30. As a further reuslt [sic] of the aforesaid, Plaintiff has been unable in the past, and may be unable in the future, to attend to her usual duties, occupations and avocations and has suffered a loss of earnings and future earning capacity, all to her great detriment and loss, financial and otherwise.

31. As a direct result of Defendants failing to perform the aforementioned diagnostic testing which resulted in Plaintiff delivering a child suffering from Down's Syndrome, which is a permanent medical condition, Plaintiff has suffered severe economic loss and will continue to suffer tremendous economic costs in the raising of said child and in affording said child the appropriate medical treatment and care, as well as appropriate and necessary educational and other social services necessary for the child to have a life which is as normal as is possible under the circumstances.

32. As a direct result of the failure of Defendants to afford the appropriate diagnostic amniocentesis testing and availing Plaintiff of the opportunity to abort said pregnancy, Plaintiff has been unable to resume her prior employment opportunities and has suffered significant financial loss, all to her great detriment and loss, and will continue to do so for an indefinite time into the future in order to afford the appropriate treatment and care of Plaintiff's child, Cory Jenkins, who requires constant care and attention of Plaintiff, Gwendolyn Jenkins, and will need said care for an indefinite time into the future.

33. As a further result of the aforesaid, Plaintiff has been required and will be required in the future to expend and become liable for substantial sums of money for medicines, and medical treatment and care for herself and in

particular, Plaintiff has incurred and is liable for the costs of the aforesaid sterilization procedures and hospitalization costs attending to the delivery of her child, Cory Jenkins, all of which would have been avoided if Plaintiff was timely made aware of the genetic abnormality of her child in time to abort said pregnancy.

(R. 10a–11a).

The averments of the first count were incorporated into Count II of the complaint which alleged that the medical providers had breached their contractual obligations by performing the sterilization procedure without obtaining her informed consent. She alleged that the medical providers had a contractual obligation to make all relevant medical information available to her prior to performing the procedure, and that she suffered monetary damages as a result of their failure to do so, "including the cost of the sterilization procedure and possible future costs of medical treatment and care which may be incurred in the future to reverse said sterilization." Preliminary objections were filed by the Appellants requesting that Count II be stricken as duplicative of Count I. The trial court sustained the motion to strike the second count by an order entered on January 21, 1987. No appeal from that order was taken.

Count III of the complaint was directed against the hospital alleging its negligence in failing to monitor the physicians, in failing to provide the proper medical treatment, and in failing to set appropriate guidelines for sterilization procedures. Ms. Jenkins sought damages for mental anguish, loss of earnings and loss of future earning capacity arising from her inability to attend to her usual occupation, and expenses related to raising the child. With respect to the child-related expenses, she alleged:

40. As a direct result of the injuries aforementioned and caused solely thereby, Plaintiff has suffered great physical and mental and emotional pain and will continue to suffer such pain and anguish for an indefinite time into the future, all to her great detriment and loss.

41. As a direct result of the aforementioned injuries, Plaintiff has suffered a complete sterilization, which has left her unable to bear any further children all to her great detriment and loss.

42. As a further result of the aforesaid, Plaintiff has been unable in the past, and may be unable in the future, to attend to her usual duties, occupations and avocations and has suffered a loss of earnings and future earning capacity, all to her great detriment and loss, financial and otherwise.

43. As a further result of the aforesaid, Plaintiff has been required in the past and will be required in the future to expend and become liable for substantial sums of money for medicines and medical attention both for herself and for her child, Cory Jenkins, in and about endeavoring to secure treatment for her injuries and illnesses to her son, Cory Jenkins, all to her great detriment and loss, financial and otherwise.

44. As a direct result of Defendants failing to perform the aforementioned diagnostic testing which resulted in Plaintiff delivering a child suffering from [D]own's Syndrome, which is a permanent medical condition, Plaintiff has suffered severe economic loss and will continue to suffer tremendous economic costs in the raising of said child and in affording said child the appropriate medical treatment and care, as well as appropriate and necessary educational and other social services necessary for the child to have a life which is an [sic] normal as is possible under the circumstances.

45. As a direct result of the failure of Defendants to afford the appropriate diagnostic amniocentesis testing and availing Plaintiff of the opportunity to abort said pregnancy, Plaintiff has been unable to resume her prior employment opportunities and has suffered significant financial loss, all to her great detriment and loss and will continue to do so for an indefinite time into the future in order to afford the appropriate treatment and care of Plaintiff's child, Cory Jenkins, who requires constant care and at-

tention of Plaintiff, Gwendolyn Jenkins and will need said care for an indefinite time into the future.

(R. 13a–14a).

After the pleadings were closed, the Appellants moved for judgment on the pleadings with respect to paragraphs 31–33 and 43–45 of the complaint. The Appellants sought judgment on the pleadings on the basis that 42 Pa.C.S.A. § 8305(a) precluded the claim for wrongful birth set forth in those paragraphs. The trial court granted the motion and directed that the specified paragraphs be stricken from the complaint. The proceedings on the remaining allegations were stayed pending an appeal.

Ms. Jenkins appealed to the Superior Court, arguing that the retroactive application of 42 Pa.C.S.A. § 8305 violated the due process and equal protection guarantees of the state and federal constitutions and that the statute violated the separation of powers doctrine. After oral argument, the Superior Court entered an order stating that a panel of the court had determined that the case involved matters of sufficient importance to warrant consideration by the court en banc, namely, whether an order disposing of fewer than all causes of action raised in a single complaint is appealable. The Superior Court concluded that the trial court's order was a final order as the stricken portion of the complaint stated a separate and distinct cause of action for wrongful birth. The Superior Court reversed the trial court's order and remanded the case to the trial court for further proceedings, 401 Pa.Super. 604, 585 A.2d 1091. We granted the Appellants' Petition for Allowance of Appeal.

The Appellants assert that the Superior Court erred in holding that the trial court's order was a final and appealable order and that appellate review of the trial court's order should be deferred until there is a final adjudication as to all of the causes of action contained in the complaint. The Appellants contend that the order dismissing six of the paragraphs of the complaint is interlocutory, in that it dismissed less than all of the counts of a multi-count complaint. The

Appellants seek to defer appellate review of the trial court's order until disposition of all of the claims raised by Ms. Jenkins.

▮▮▮▮ An appeal will lie only from a final order unless otherwise permitted by statute or rule. A final order is usually one which ends the litigation or, alternatively, disposes of the entire case. *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985); *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978). The purpose of this policy is to avoid piece-meal litigation and the consequent protraction of litigation. *Sweener v. First Baptist Church,* 516 Pa. 534, 533 A.2d 998 (1987).

▮▮▮ Generally, an order dismissing less than all counts of a multi-count complaint is interlocutory and unappealable. This general rule recognizes that the plaintiff's litigation is ordinarily not terminated by such an order and that the plaintiff may proceed to a determination of the merits of the complaint. The application of the general rule is less compelling, however, when an order dismissing a separate and distinct cause of action is entered.[1] In those instances, piece-meal litigation and multiple trials may not be avoided by delaying appellate review when the underlying ruling is incorrect.

In *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983), the Superior Court thoroughly analyzed the practical ramifications of orders disposing of separate and distinct causes of action in a multi-count complaint. After a criminal complaint charging him with issuing bad checks had been dismissed, the plaintiff had filed a trespass complaint against a district justice alleging causes of action for false arrest, malicious abuse of process, and assault and battery. The district justice filed a motion for judgment on the pleadings, asserting judicial immunity. The plaintiff appealed from the entry of

1. The Appellants seek suppo. for their position in the recent amendment to Rule 341 of the Pennsylvania Rules of Appellate Procedure, which became effective on July 6, 1992. The amendment addresses the appealability of orders or decisions that adjudicate fewer than all the claims for relief presented in an action. The amendment of the rule does not apply to the order entered in the instant case and will not be addressed for that reason.

summary judgment in favor of the district justice on the two counts for false arrest and malicious abuse of process.

The Superior Court noted that the trial court's entry of summary judgment on the two counts effectively precluded the plaintiff from pursuing the merits of those causes of action. Because the finality of the judgments entered against the plaintiff was not affected by the fact that the merits of the separate action for assault and battery remained undetermined, the Superior Court concluded that the judgments entered against him were appealable. The Superior Court stated,

> Where separate and distinct causes of action have been joined under permissive joinder standards of Pa.R.C.P. 1020(a) or Pa.R.C.P. 1044(a), the appealability of a judgment entered on one or more but not all counts must be distinguished from the situation in which separate counts have been used to state alternate theories for recovery on the same cause of action. In the former situation, the summary judgment has terminated litigation upon a separate and distinct cause of action. In the latter, an order dismissing or entering judgment on one or more but not all counts of a complaint is interlocutory, for the plaintiff can, nevertheless, proceed to a determination on the underlying cause of action.

313 Pa.Super. at 341, 459 A.2d at 1260. (Citation omitted.) The Superior Court held that where final judgment has been entered on a separate cause of action, the judgment is appealable.

■ In determining whether an order is final, the practical ramifications of the order must be considered. *Pennsylvania Turnpike Commission v. Atlantic Richfield Company*, 482 Pa. 615, 394 A.2d 491 (1978). An order dismissing one or more counts of a multi-count complaint which sets forth alternate theories of recovery is interlocutory and not appealable because the plaintiff may pursue the merits of a cause of action on an alternate theory. *Dorohovich v. West American Insurance Company*, 403 Pa.Super. 412, 589 A.2d 252 (1991); *Daywalt v. Montgomery Hospital*, 393 Pa.Super. 118, 573 A.2d

1116 (1990). Judgment entered on one or more distinct causes of action in a multi-count complaint is appealable, however, because the litigation of the separate cause of action is terminated.

In the instant case, the trial court's order dismissed the paragraphs of the complaint that alleged economic losses related to raising the child, including loss of earning capacity, and expenses for medical care and treatment. The language of the three counts was repetitious and did not explicitly identify the causes of action stated in the complaint. It was apparent to the parties and the lower courts, however, that paragraphs 31–33 and 43–45 stated claims for damages allegedly resulting from the wrongful birth of the child.

The Superior Court found that the complaint stated two separate and distinct causes of action—one for wrongful birth and one based upon lack of informed consent. Ms. Jenkins alleged two different harms: (1) the birth of a child with Downs Syndrome, and (2) the sterilization performed without her informed consent. The Superior Court concluded that although the two claims could have been stated more clearly, they had been stated clearly enough. The Superior Court was correct in its analysis of the causes of action and the requested relief stated in the complaint. We hold that the Superior Court did not err in determining that the trial court's order was appealable.

The Appellants also assert that the trial court's order dismissing the cause of action for wrongful birth should be reinstated because 42 Pa.C.S.A. § 8305(a) eliminated a cause of action for wrongful birth. Section 8305(a) provides, in relevant part:

(a) **Wrongful birth.**—There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born.

As noted, this provision was given retroactive effect, including application to any case pending or on appeal, under Section 8 of the Act of April 13, 1988.

On appeal to the Superior Court, Ms. Jenkins challenged the constitutionality of the substantive and retroactive application of § 8305(a). The Superior Court addressed only the challenge to the retroactive application of this subsection because its determination that retroactive application of § 8305(a) is unconstitutional rendered consideration of the substance of the provision unnecessary. Our review is also limited to the constitutionality of the retroactivity provision. The Superior Court held that the retroactive application of § 8305(a) to causes of action accruing before its effective date was unconstitutional. Because Ms. Jenkins' cause of action accrued on March 8, 1984, more than four years before the promulgation and effective date of § 8305(a), the Superior Court held that it could not constitutionally govern this action.

■ In *Consumer Party v. Commonwealth of Pennsylvania*, 510 Pa. 158, 175, 507 A.2d 323, 331–32 (1986) (Citations omitted.), we stated that:

> The strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act have been so often stated as to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality.

"Neither the federal constitution nor our state constitution invalidates a non-penal statute merely because it is retroactive, unless such legislation impairs contractual or other vested rights." *Barasch v. Pennsylvania Public Utility Commission*, 516 Pa. 142, 167, 532 A.2d 325, 337, aff'd., 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989). "Retrospective laws may be supported when they do not disturb any vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary exi .ing obligations contrary to their situation when entered into and when prosecuted." *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960).

■ In *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980), we addressed a constitutional challenge to the retroac-

tivity provision of the legislation creating statutory sovereign immunity, Act of September 28, 1978, P.L. 788, §§ 1 et seq. (Act 152). The issue presented was whether it was constitutional to apply Act 152 to causes which became actionable prior to its enactment. We held that Act 152 could not constitutionally govern claims that accrued before its promulgation.

We set forth the analysis that gave rise to our holding in *Gibson* at great length because it is controlling in the instant case:

It is well-settled that the Legislature may not extinguish a right of action which has already accrued to a claimant. This Court has consistently held that the Legislature's repeal of a law which created a right of action does not disturb any actions accrued thereunder:

"There is a vested right in an accrued cause of action.... A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right."

The separation of powers doctrine suggests *a fortiori* that the Legislature may not disturb actions which have accrued under the Judiciary's authority. As this Court has explained:

"In the very nature of things, a law that is enacted after the case has arisen can be no part of the case. Such a law can have only a forced and unnatural relation to the case, and must produce an untrue decision; a decision, not of the case arising between the parties, as it ought to be, but of a case par. y created by the legislature.

When therefore, the constitution declares that it is the exclusive function of the courts to try private cases of disputed right, and that they shall administer justice 'by the law of the land,' and 'by due course of law,' it means

to say, that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered in its substance, by any subsequent law."

This established view is consistent with federal decisional law which squarely holds that a legislature may not constitutionally eliminate *in toto* a remedy, whether judicially or legislatively created which has already accrued.

490 Pa. at 161–62, 415 A.2d at 83. (Citations omitted.)

The Superior Court applied the principle stated in *Gibson,* that a tort cause of action generally accrues on the date of the accident or injury, to the instant case and concluded that Ms. Jenkins' cause of action accrued on March 8, 1984, the date on which the alleged wrongful birth of the child occurred. The Superior Court properly held that § 8305(a) could not serve to bar her cause of action for wrongful birth because § 8305(a) was not enacted until four years after the cause of action had accrued.

The Appellants contend also that the trial court did not err in dismissing the wrongful birth claim, arguing that wrongful birth was not recognized as a valid cause of action prior to the enactment of the legislation. The Superior Court properly dismissed this specious argument, stating, "It would be unreasonable, therefore, to conclude that [Ms. Jenkins'] cause of action had not accrued prior to the passage of § 8305(a) simply because a cause of action based on the exact facts of her case had not been 'expressly authorized by the judiciary'." *Jenkins v. Hospital of the Medical College of Pennsylvania,* 401 Pa.Super. at 626, 585 A.2d at 1102. (Emphasis deleted.)

In the past, we have used "wrongful birth" to mean a lawsuit brought on behalf of an infant who was born diseased. As we wrote in *Ellis v. Sherman:*

[W]e hold that a child born deformed and diseased as the result of the failure of physicians to inform its parents of the possibility of diseased birth may not recover in its own right for being born diseased.

512 Pa. 14, 20, 515 A.2d 1327, 1329–30 (1986). This was the "wrongful birth action." See also, *Sweener v. First Baptist Church,* 516 Pa. 534, 533 A.2d 998 (1987). *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1982); *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981). Other causes of action in these cases concern injuries to the parents. Again, from *Ellis:*

> The parents' right of recovery is not at issue in this case, and if they are able to establish their claim, they will recover not only for their own mental anguish but also for expenses related to the birth and care of their child.

*Id.* The lawsuits brought by parents in these cases for their own alleged injuries were not referred to as "wrongful birth" actions, but merely as medical malpractice actions.

The statute at issue in this case introduces confusion in that it seems to lump together the cause of action brought on behalf of the child and the cause of action brought by the parent on the parent's own behalf:

> (a) **Wrongful birth.**—There shall be no cause of action or award of damages *on behalf of any person* based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born.

42 Pa.C.S. § 8305(a). (Emphasis added.)

The statute, by its heading, suggests that *any person* who sues for damages because of a claim that a child should not have been born, is suing for "wrongful birth." Thus, under the statute, a cause of action brought by the parent on the parent's own behalf may be called a "wrongful birth" action.

In holding that Superior Court was correct in determining that "wrongful birth," i.e., the parent's lawsuit in this case, was a valid cause of action prior to enactment of the legislation, we are merely saying that the parent's cause of action for damages associated with the birth of the child, i.e., the parent's medical malpractice action brought on the parent's own behalf, is permitted by caselaw which existed prior to enactment of the statute.

The order of the Superior Court is affirmed.

MONTEMURO, J., did not participate in the consideration or decision of this case.

NIX, C.J., and PAPADAKOS, J., concur in the result.