

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-1996

# In Re: TMI

Precedential or Non-Precedential:

Docket 94-7598

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"In Re: TMI" (1996). *1996 Decisions.* Paper 105.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/105

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

_____

No. 94-7598
_____


IN RE: TMI


DOROTHY L. ALDRICH; FAITH ALLEMAN;
PHILIP ANGELI; MICHAEL J. ANOKA;
RUTH V. ANOKA; CATHERINE J. BALINOSKY;
REGIS E. BEASLEY; LOUIS BORDA;
BETTY MARIE BOYLESTEIN; GEORGE L. BOYLESTEIN;
SHIRLEAN BURHANAN; RUTH E. BUTLER;
FRANK J. CAKA; SUSAN H. CHYNOWETH;
DANIEL M. CHYNOWETH; CATHERINE COSTELLO;
JOHN T. COSTELLO; MARTHA A. COSTIK;
RICHARD N. COSTIK; MARY MARGARET EARHART;
EDWARD FERGUSON; MARCO G. GLAD, JR.;
LINDA I. GLAD; BARBARA GRANDON;
HELEN M. HANK; EDWARD JOHN HERTZOG;
MARIE H. HERTZOG; DIANNE HINDERMYER;
GEORGE VANCE HITZ; MARJORIE B. HITZ;
CAROL C. HOCH; LOUIS A. HOCH;
ESTATE OF ROBERT P. HOLMES;
THELMA M. NAGY; BARRY OBERCASH;
GEORGEANN PRISTELLO; JAMES J. PRISTELLO;
JAMIE LYNN PRISTELLO; KENNETH R. SNYDER;
PATRICIA SOUTHARD; JOSEPH STEWART;
CHARLOTTE EVELYN STEWART,
                            Appellants


_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 88-cv-01452)
_____


Argued May 1, 1995

Before:  SCIRICA, McKEE and SAROKIN, Circuit Judges

(Filed   July 18, l996)


ARNOLD LEVIN, ESQUIRE (ARGUED)

                         Levin, Fishbein, Sedran & Berman
                         320 Walnut Street, Suite 600
                         Philadelphia, Pennsylvania 19106

                         LEE C. SWARTZ, ESQUIRE
                         Hepford, Swartz & Morgan
                         111 North Front Street
                         P.O. Box 889
                         Harrisburg, Pennsylvania 17108

                         WILLIAM R. WILSON, JR., ESQUIRE
                         654 North State Street
                         Jackson, Mississippi 39202

                            Attorneys for Appellants


                         ELLEN K. SCOTT, ESQUIRE (ARGUED)
                         ALFRED H. WILCOX, ESQUIRE
                         Pepper, Hamilton & Scheetz
                         18th and Arch Streets
                         3000 Two Logan Square
                         Philadelphia, Pennsylvania 19103

                            Attorneys for Appellees

_____

OPINION OF THE COURT
_____


SCIRICA, Circuit Judge.

         In the wake of the Three Mile Island nuclear accident in 1979, more than two thousand individuals brought suit for personal injuries.  The forty-two plaintiffs in this appeal missed Pennsylvania's two year limitations date, and filed suit in Mississippi in order to fall within that state's six year statute of limitations.  These plaintiffs now challenge the retroactive application of the choice of law provision of the Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066.  Retroactive application of the choice of law provision would require application of Pennsylvania's statute of limitations to all actions arising from the Three Mile Island accident and would bar plaintiffs' claims filed in Mississippi. Plaintiffs argue retroactive application of the choice of law provision violates federal constitutional guarantees of due process.  Alternatively they argue that even if the Pennsylvania statute of limitations applies, Pennsylvania law provides for a grace period in which to file their claims.  Because retroactive application of the choice of law provision was a rational exercise of Congress' legislative power, we hold it does not

violate due process. Additionally, we hold Pennsylvania law does not provide for a grace period under the circumstances of this case.

The same plaintiffs also challenge summary judgment rendered against them in actions they filed in Pennsylvania state court after the two year limitation date. They assert the statute of limitations should have been tolled under Pennsylvania law. Because plaintiffs have failed to raise a material issue of fact, we will affirm summary judgment.

## I. Facts and Procedural History

On March 28, 1979, the Three Mile Island nuclear power facility located near Harrisburg, Pennsylvania released radiation into the atmosphere. As a result, thousands of area residents and businesses filed suit against the owners and operators of the facility, alleging various injuries. In 1985, each of the forty-two plaintiffs involved in this appeal filed suit in Pennsylvania state court, Mississippi state court, and Mississippi federal court to recover for personal injuries allegedly suffered in the incident. The Mississippi actions were filed within that state's six year statute of limitations for personal injury actions.

In September 1986, defendants moved for summary judgment in plaintiffs' Pennsylvania state court actions contending each claim related to health problems diagnosed more than two years before plaintiffs commenced their suits. The Court of Common Pleas of Dauphin County, Pennsylvania entered summary judgment for defendants, finding plaintiffs' claims barred by Pennsylvania's two year statute of limitations. In re TMI Litig. Cases Consolidated II, No. 426 S (1985) (Dauphin Co. February 20, 1987); In re TMI Litig. Cases Consolidated II, No. 426 S (1985) (Dauphin Co. July 6, 1987). The Pennsylvania Superior Court affirmed. In re TMI Litig. Cases Consolidated II, No. 00426 Harrisburg 1987 (Pa. Super. July 15, 1988).

Subsequently, Congress enacted the Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066, which created a federal cause of action--the "public liability action"--for injuries resulting from nuclear incidents, 42 U.S.C. 2014(hh) (1988), and provided for jurisdiction over and the consolidation of such actions in the federal district court in the district where the accident occurred, 42 U.S.C. 2210(n)(2). Defendants removed the Pennsylvania and Mississippi state cases to federal court in the Middle District of Pennsylvania pursuant to 42 U.S.C. 2210(n)(2). At the time of removal of the Pennsylvania state cases, the time to appeal the grant of summary judgment to the Pennsylvania Supreme Court had not yet expired. The Mississippi federal actions were transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. 1404(a).

After consolidation of the cases in the Middle District of Pennsylvania, defendants filed a motion for summary judgment with respect to the Mississippi state and federal court actions on the grounds that plaintiffs' claims were untimely under the Price-Anderson Amendments Act of 1988. Section 11(b) of the Amendments Act, the choice of law provision (codified at 42

U.S.C. 2014(hh) (1988)), provides that "the substantive rules of decision in [any public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs." Section 20(b) of the Amendments Act, the effective date provision (codified as a note to 42 U.S.C. 2014), provides that "the amendments made by Section 11" of the Amendments Act "shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act." 42 U.S.C. 2014 note (emphasis added). The district court held that 20(b), read in conjunction with 11(b), compels retroactive application of Pennsylvania's two year statute of limitations to the causes of action brought by the plaintiffs, mandating the dismissal of the Mississippi state and federal cases as time barred. In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 2-6 (M.D. Pa. Aug. 16, 1993). Plaintiffs do not dispute this reading of the Amendments Act on appeal.

Plaintiffs asserted before the district court that retroactive application of the choice of law provision would violate constitutional guarantees of due process. They also argued that Pennsylvania law, incorporated as federal law by the Amendments Act, would provide a grace period in which to file their claims. The district court rejected both arguments, id. at 15-20, and plaintiffs now appeal the district court's grant of summary judgment.

The district court also adopted the prior judgment rendered by the Court of Common Pleas against plaintiffs in the Pennsylvania state cases. Id. at 23. Plaintiffs sought reconsideration of the grant of summary judgment, arguing that under the intervening holding of the Pennsylvania Superior Court in Marinari v. Asbestos Corp., 612 A.2d 1021 (Pa. Super. 1992), their claims arising from "second injuries" should not have been dismissed. Upon reconsideration, the district court ordered plaintiffs to specify which plaintiffs had "second injuries" subject to the Marinari rule. In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 13 (M.D. Pa. June 1, 1994). On July 12, 1994, the parties entered into a stipulation that Marinaridid not relate to the "initial injury" claims which were the subject of defendants' motion for summary judgment and that any "second injury" claims would be treated in a separate class action. In re TMI Litig. Cases Consol. II, No. 88-1452 (M.D. Pa. July 14, 1994). The district court then entered summary judgment against plaintiffs on the "initial injury" claims and dismissed them as time barred. In re TMI Litig. Cases Consol. II, No. 88-1452 (M.D. Pa. July 22, 1994). Plaintiffs appeal this order, arguing the statute of limitations had not expired on "initial injury" claims.

The district court had jurisdiction over these "public liability actions" under 42 U.S.C. 2210(n)(2), and we exercise jurisdiction over the district court's final orders under 28 U.S.C. 1291. Our review of the district court's grant of summary judgment is plenary. See F.D.I.C. v. Bathgate, 27 F.3d 850, 860 (3d Cir. 1994).

## II. Statutory Construction

The district court held the language of 20(b) is

unambiguous and "by its very terms clearly requires the retroactive application of all of the provisions of   11, including the choice of law provision."  In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 3 (M.D. Pa. Aug. 16, 1993). Although plaintiffs have not challenged the district court's reading of the Amendments Act on appeal, we exercise plenary review of the district court's construction of the Act.  Moody v. Sec. Pac. Business Credit, Inc., 971 F.2d 1056, 1063 (3d Cir. 1992).

Section 20(b) unambiguously calls for the retroactive application of the choice of law provision in   11(b).  The choice of law provision in turn provides that "the substantive rules for decision" shall be derived from Pennsylvania law. Since the statute of limitations is a substantive rule of decision, Menichini v. Grant, 995 F.2d 1224, 1228 n.2 (3d Cir. 1993); 42 Pa. Cons. Stat. Ann.   5524 (1981), we believe the Pennsylvania statute of limitations applies retroactively to plaintiffs' causes of action filed in Mississippi.  Congress could have exempted statutes of limitations from retroactive application, but it did not.  Accordingly, plaintiffs' Mississippi causes of action are time-barred, unless some constraint imposed by the Constitution or state law prevents this result.

### III.  Due Process

The district court held the choice of law provision of the Price-Anderson Amendments Act requires application of Pennsylvania law, including the Pennsylvania statute of limitations, to the Mississippi state and federal cases. Plaintiffs argue the retroactive application of Pennsylvania's statute of limitations to bar properly filed and already pending causes of action violates federal constitutional due process. Well-established precedent indicates that it does not.

### A.

Under the United States Constitution, legislation affecting a pending tort claim is not subject to "heightened scrutiny" due process review because a pending tort claim does not constitute a vested right.  See Hammond v. United States, 786 F.2d 8, 12 (1st Cir. 1986) (plaintiff does not have a vested right in a tort cause of action until there is a final, unreviewable judgement); see also Arbour v. Jenkins, 903 F.2d 416, 420 (6th Cir. 1990) (retroactivity of a statute does not make it unconstitutional as a legal claim affords no enforceable property right until reduced to final judgement); Sowell v. American Cyanamid Co., 888 F.2d 802, 805 (11th Cir. 1989) (same). Other courts of appeals that have recently addressed the constitutionality of retroactive legislation that either abolishes or substantially affects a plaintiff's pending tort cause of action have reviewed such legislation on a "rational basis" standard.  See, e.g., In re Consolidated U.S. Atmospheric Testing Litig., 820 F.2d 982, 990-91 (9th Cir. 1987) (plaintiff challenging retroactivity bears the burden of showing that the legislature acted in arbitrary, irrational way), cert. denied sub nom. Konizeski v. Livermore Labs, 485 U.S. 905 (1988); see alsoHammond, 786 F.2d at 13.  In In re TMI Litig. Cases Consol. II,

940 F.2d 832 (3d Cir. 1991), cert. denied sub nom. Gumby v. General Pub. Utils. Corp., 503 U.S. 906 (1992), we held that due process requires only that "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means."  Id. at 860 (quoting Pension Benefit Guarantee Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984)).  Accordingly, in order to show that retroactive application of the choice of law provision of the Amendments Act violates due process guarantees, plaintiffs bear the burden of showing that retroactive application was "irrational in purpose and effect."  Id. at 861.  This they cannot do.

                              B.
          Congress adopted the Amendments Act "to effect uniformity, equity, and efficiency in the disposition of public liability claims" arising from nuclear accidents.  H.R. Rep. No. 104, 100th Cong., 1st Sess., pt. 3, at 18 (1987).  We believe retroactive application of the Amendments Act's choice of law provision furthers each of these goals.
          First, retroactive application of the Amendments Act's choice of law provision uniformly applies Pennsylvania law to all plaintiffs.  Second, retroactive application advances equity by applying the same law to all similarly situated plaintiffs and eliminating inconsistent results.  While retroactive application of the choice of law provision requires dismissal of these plaintiffs' claims which were filed in compliance with Mississippi's six year statute of limitations, this result is not inequitable.  These actions were time-barred in Pennsylvania when they were brought, and plaintiffs resorted to a distant forum in order to avoid Pennsylvania's statute of limitations.  Application of the law of the state in which the accident occurred, the plaintiffs live, and where the plaintiffs were allegedly injured is not inequitable.
          Finally, retroactive application of the choice of law provision promotes efficiency by allowing the constitutional exercise of federal jurisdiction over, and the consolidation of, these "public liability actions."  Prior to the Amendments Act, the Price-Anderson Act provided for federal jurisdiction over only a limited class of cases--those arising from an "extraordinary nuclear occurrence."  Kiick v. Metropolitan Edison Co., 784 F.2d 490, 493 (3d Cir. 1986); Stibitz v. Gen. Pub. Utils. Corp., 746 F.2d 993, 997 (3d Cir. 1984), cert. denied, 469 U.S. 1214 (1985).  Because the Nuclear Regulatory Commission did not designate the Three Mile Island accident an "extraordinary nuclear occurrence," the federal courts lacked subject matter jurisdiction to hear Three Mile Island cases filed in jurisdictions across the country.  This situation resulted in "duplicative determinations of similar issues in multiple jurisdictions."  S. Rep. No. 218, 100th Cong., 1st Sess. 13 (1987), reprinted in 1988 U.S.C.C.A.N. 1476, 1488.
          Congress sought to remedy the procedural problems plaguing the Three Mile Island cases by retroactively providing for federal jurisdiction over them and allowing their consolidation.  But in creating federal jurisdiction, Congress was constrained by the constitutional principle that it cannot

confer subject matter jurisdiction on federal courts where there is no underlying federal statute creating a federal question. See Osborne v. Bank of United States, 22 U.S. (9 Wheat) 738 (1824); Verlinden B. V. v. Central Bank of Nigeria, 461 U.S. 480 (1983); see also In re TMI Litig. Cases Consol. II, 940 F.2d at 849 ("a case cannot be said to arise under a federal statute where there is nothing more than a jurisdictional grant."). Congress was clearly aware of this constitutional constraint. It did not, therefore, simply grant federal courts subject matter jurisdiction over all cases arising from nuclear accidents. Instead it created substantive federal law governing nuclear accidents in the choice of law provision of the Amendments Act by providing "the substantive rules of decision in [any public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs." 42 U.S.C. 2014(hh). In the absence of the retroactive application of the choice of law provision to the Three Mile Island cases, Congress' retroactive creation of federal jurisdiction over them in the Amendments Act would be nothing more than an unconstitutional grant of jurisdiction without any underlying substantive federal legislation creating a federal question. In re TMI Litig. Cases Consol. II, 940 F.2d at 854–55; O'Connor v. Commonwealth Edison Co., 13 F.3d 1090, 1096–1101 (7th Cir.), cert. denied, 114 S. Ct. 2711 (1994). Accordingly, there is little doubt that the retroactive application of the choice of law provision has furthered the efficient and uniform processing of claims arising from the Three Mile Island accident by allowing those claims to be brought and to be consolidated in federal court.

Because retroactive application of the choice of law provision to pending causes of action advances Congress' goals of uniformity, equity and efficiency in the disposition of claims arising from nuclear accidents, it is not arbitrary and irrational. Plaintiffs have not demonstrated retroactive application violates constitutional due process. Cf. O'Conner v. Commonwealth Edison Co., 13 F.3d at 1102 (retroactive application of Amendments Act not arbitrary and irrational); In re TMI Litig. Cases Consol. II, 940 F.2d at 860–61 (same).

IV. Grace Period under Pennsylvania Law

Plaintiffs also argue retroactive application of the Amendments Act's choice of law provision does not require dismissal of the Mississippi actions. They assert the choice of law provision incorporates all Pennsylvania law as federal law, including a century–old line of Pennsylvania cases that holds due process requires a grace period when the legislature retroactively curtails a statute of limitations. See Kay v. Pennsylvania Railroad Co., 65 Pa. 269 (1870); Byers v. Pennsylvania Railroad Co., 18 Pa. Co. Ct. R. 187 (Allegheny Co. 1896); Philadelphia B. & W.R. Co. v. Quaker City Flour Mills Co., 127 A. 845 (Pa. 1925); Ferki v. Frantz's Transfer Co., 31 A.2d 586 (Pa. Super. 1943); Wilson v. Central Penn Indus., Inc., 452 A.2d 257 (Pa. Super. 1982). The district court declined to follow this line of cases, doubting its vitality in light of intervening developments in property law relating to vested rights, and refusing to read broad due process rights into the

Pennsylvania Constitution on such a weak precedential basis.  In re TMI Litig. Cases Consol. II, No. 88-1452, slip. op. at 17-19 (M.D. Pa. Aug. 16, 1993).  Even if the grace period doctrine retains force under the Pennsylvania Constitution, we do not believe the Pennsylvania Supreme Court would apply it under the facts of this case.

None of the Pennsylvania grace period cases addresses a situation in which Pennsylvania plaintiffs failed to sue within the time period allotted by the Pennsylvania statute of limitations and brought suit in another state's courts to avoid Pennsylvania's time bar.  We believe the Pennsylvania borrowing statute, 42 Pa. Cons. Stat. Ann.  5521 (1981), accurately reflects current state policy against "forum shopping" by applying to claims arising in another state either the other state's statute of limitations or the Pennsylvania statute of limitations, whichever is shorter.  "Pennsylvania's borrowing statute unequivocally [evinces] the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose."  Gwaltney v. Stone, 564 A.2d 498, 503 (Pa. Super. 1989).  We believe Pennsylvania courts would not look favorably on plaintiffs here who missed Pennsylvania's statute of limitations, although Pennsylvania is the state where the accident occurred, and brought suit in Mississippi.  Even if the Pennsylvania Supreme Court would require a grace period when the Pennsylvania legislature retroactively shortens a statute of limitations, we do not believe they would require a grace period in this case.

V.  The Discovery Rule and Fraudulent Concealment

Plaintiffs in the Pennsylvania state cases appeal the district court's grant of summary judgment on their "initial injury" claims.  First, plaintiffs argue the statute of limitations was tolled under the "discovery rule" until they knew or should have known their injuries were caused by the Three Mile Island accident.  Plaintiffs assert there are material issues of fact as to whether they knew or should have known the cause of their injuries.  Second, plaintiffs argue the statute of limitations was tolled because defendants fraudulently concealed information about the Three Mile Island accident.

A.  The Discovery Rule

The discovery rule tolls the running of a statute of limitations until "the plaintiff knows, or reasonably should know:  (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."  Cathcart v. Keene Industrial Insulation, 471 A.2d 493, 500 (Pa. Super. 1984) (in banc); see also Hayward v. Medical Ctr. of Beaver County, 608 A.2d 1040, 1043 (Pa. 1992).  Every plaintiff has a duty to exercise "reasonable diligence" in ascertaining the existence of an injury and its cause.  Stauffer v. Ebersole, 560 A.2d 816, 817 (Pa. Super.), app. denied, 571 A.2d 384 (1989).

In their brief, plaintiffs assert that several plaintiffs filed their actions within two years of diagnosis of a specific injury, and thereby complied with the discovery rule. Under Pennsylvania law, plaintiffs bear the burden of proving

they filed their claims within the applicable statute of limitations.  See Osei–Afriyie v. Medical College of Pennsylvania, 937 F.2d 876, 884 (3d Cir.) (citing cases), cert. denied,  112 S. Ct. 581 (1991).  Where, as here, the non–moving party bears the burden of proof at trial, summary judgment is appropriate if non–movants fail to "make a showing sufficient to establish the existence of an element essential to [their] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993).  In responding to a motion for summary judgment, the non–moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Beyond mere assertions, plaintiffs have not directed us to any evidence in the record that raises a material issue of fact as to whether any plaintiff filed suit within two years of discovery of an "initial injury." Accordingly, we believe summary judgment was appropriate.

Plaintiffs also argue that "because the [discovery rule] involves questions of what a reasonable person should have known, a classic jury question is invariably presented, thereby precluding the use of the summary judgment procedure."  Brief of the Appellants at 35–36.  But the Court of Common Pleas held, and the record confirms, that the plaintiffs knew of the Three Mile Island accident, and knew or should have known that exposure to radiation could cause adverse health affects.  In such circumstances, the discovery rule does not toll the running of the statute of limitations.

Plaintiffs also assert summary judgment was improper because factual questions remain as to whether they used reasonable diligence to discover the cause of their injuries. The Court of Common Pleas held:

> The responses to interrogatories . . . reveal plaintiffs knew of their specific injury more than two years prior to the time they filed their complaint.  Thus, at that time they possessed the requisite knowledge to set the statutory clock running.  Under the law of Pennsylvania they were under a duty to use all reasonable diligence to investigate the operative facts of their cause of action. . . . Given the notoriety of the accident and the plethora of investigative reports available to plaintiffs, it is clear that they had the "means of discovery" available to them.

In re TMI Litig. Cases Consolidated II, No. 426 S (1985), slip op. at 8–9 (Dauphin Co. February 20, 1987).  Plaintiffs have not directed us to any evidence in the record that leads us to doubt these conclusions.  Accordingly, we believe the district court properly granted summary judgment with respect to "initial injury" claims.

### B.  Fraudulent Concealment

Plaintiffs also argue the statute of limitations was tolled because defendants fraudulently concealed information relating to the Three Mile Island accident. See Molineux v. Reed, 532 A.2d 792, 794 (Pa. 1987) ("Where through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations.") (internal quotations omitted). In order to establish fraudulent concealment by a defendant, a plaintiff must prove "an affirmative or independent act of concealment that would divert or mislead the plaintiff from discovering the injury" or its cause. Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991). But plaintiffs have not directed us to any evidence that defendants sought to conceal the cause of their injuries. While plaintiffs have referred to statements by defendants' employees downplaying the seriousness of the accident immediately after it occurred, such statements do not create an issue of material fact with respect to fraudulent concealment.

In response to plaintiffs' fraudulent concealment argument, the Court of Common pleas found:

> The contention simply cannot prevail. Here, defendants did not "conceal" the fact that radiation escaped from the TMI facility. Defendants did nothing to induce plaintiffs not to file timely claims. In fact, the notice of the 1981 class action settlement, which was disseminated to all households within twenty-five miles of the reactor and widely publicized, put all persons on notice that if they believed they had a claim for personal injury, they should start their own lawsuit. This is not the type of conduct which could give rise to a claim of estoppel.
>
> Moreover, given the vast amount of information available to plaintiffs concerning the nature and extent of the accident, it is not rationally possible to ascertain any basis from which plaintiffs could claim that defendants are estopped from asserting the limitations defense. Defendants engaged in no affirmative action which could have caused these plaintiffs to deviate from their right of inquiry.

In re TMI Litig. Cases Consolidated II, No. 426 S (1985), slip op. at 10 (Dauphin Co. February 20, 1987).

We agree that defendants' statements could not have caused plaintiffs to deviate from their right of inquiry into the source of their injuries. The record reflects that voluminous information about the Three Mile Island accident was in the public domain. Moreover, many other plaintiffs obtained sufficient information to file suit within the statute of limitations. Under these circumstances, plaintiffs' have not

raised a genuine issue of material fact with respect to fraudulent concealment.  Summary judgment was proper.

VI.  Conclusion

The choice of law provision of the Price Anderson Amendments Act, 42 U.S.C.   2014(hh), mandates the retroactive application of Pennsylvania's two year statute of limitations to the plaintiffs claims filed in Mississippi state and federal court.  Retroactive application comports with constitutional requirements of due process, and, in the circumstances of this case, Pennsylvania law does not provide for a grace period in which plaintiffs may file their claims.  No issue of material fact precluded a grant of summary judgment based on the statute of limitations in the Pennsylvania state cases.  For the foregoing reasons, we will affirm the judgment of the district court.


SAROKIN, Circuit Judge, dissenting.

I dissent primarily because I cannot conclude that Congress intended the Amendments Act to extinguish pending suits that were timely instituted in accordance with then-applicable statutes of limitations simply because they would not have satisfied the statute of limitations of the forum in which the underlying nuclear accident occurred.  Nor can I conclude that Congress intended that certain pending claims survive while other identical ones cease to exist as a result of limitations periods that did not apply on the day those claims were filed.  Certainly such a result is inconsistent with Congress's intent to promote "'equitable and uniform treatment of victims.'"  TMI II, 940 F.2d at 861 (quoting H.R.Rep. No. 104, 100th Cong., 1st Sess., pt. 1, at 18, 29 (1987)).

I agree with the majority that the jurisdictional provision, the choice-of-law provision, and the definition of "public liability action" contained in section 11 apply retroactively to lawsuits that were pending when the Amendments Act was passed.  Because the majority's understanding of that retroactive application sweeps too broadly, however, I respectfully dissent.

It is well established that "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'"  Miller v. Florida, 482 U.S. 423, 430 (1987)(quoting Weaver v. Graham, 450 U.S. 24, 31 (1981)).  Thus, retroactive legislation includes "'all statutes, which, though operating only from their passage, affect vested rights and past transactions.'"  Id. (quoting Society for the Propagation of the Gospel v. Wheeler, 22 F.Cas. 756, 767 (No. 13,156)(CCDNH 1814))(emphasis added).  In the words of Justice Story,

> "every statute, which takes away or impairs
> vested rights acquired under existing laws,
> or creates a new obligation, imposes a new
> duty, or attaches a new disability, in
> respect to transactions or considerations

already past, must be deemed retrospective .
. . ."

Id. (citation omitted).  Nevertheless, "deciding when a statute
operates 'retroactively' is not always a simple or mechanical
task."  Landgraf v. USI Film Products, __ U.S. __, 114 S. Ct.
1483, 1498 (1994).  Ultimately, whether a particular application
is retroactive "depends upon what one considers to be the
determinative event by which retroactivity or prospectivity is to
be calculated."  Kaiser Aluminum & Chemical Corp. v. Bonjorno,
494 U.S. 827, 857 n.3 (1990)(Scalia, J., concurring).

In this case, Congress expressly stated that the
Amendments Act "shall apply to nuclear incidents occurring
before, on, or after the date of the enactment of this Act."  42
U.S.C.  2014 (emphasis added).  I agree with the majority that
the term "nuclear incidents" includes pending actions arising
from such incidents.  What is unclear from the statute is how
exactly the "shall apply" language should be interpreted in the
context of pending actions.

The statute itself offers no guidance on this
point.  As a theoretical matter, however, retroactivity can be
understood in one of two ways.  First, it can be understood as
the majority apparently construes it: as a rewriting of history.
Under this theory, section 20 reaches into the past to transform
pending lawsuits as of their inception, undoing and rewriting all
subsequent proceedings and applying new law as though it had
existed from the date of filing.  This theory engenders a
historical fiction pursuant to which plaintiffs' suits were
public liability actions when they were filed in 1985, governed
by Pennsylvania substantive law and subject to original federal
jurisdiction, although the Amendments Act did not take effect
until three years later.

Alternatively, the Amendments Act can be seen as
retroactive in the more limited sense that it "attaches new legal
consequences to events completed before its enactment."
Landgraf, 114 S. Ct. at 1499.  This theory would mean simply that
all pending actions asserting public liability were transformed
on August 20, 1988 into public liability actions, and that the
federal courts acquired original jurisdiction over those actions
as of, but not prior to, that date.

Either interpretation of retroactivity is
acceptable as a theoretical matter.  It is our task to determine
which is the correct one under the circumstances of this case.

I conclude that the latter interpretation of
retroactivity under section 20 is the correct one, for several
reasons.  First and foremost, applying the Amendments Act to
pending cases from August 20, 1988 forward accomplishes the goals
that Congress intended the retroactivity provision to accomplish
by defining the pending Three Mile Island cases as public
liability actions and providing for their removal to federal
court and litigation under federal substantive law.

Second, where, as here, the statute is ambiguous
as to the appropriate scope of retroactivity, I believe that the
well-established presumption against statutory retroactivity

requires interpreting that scope narrowly. In this case, the statute neither states explicitly that the substantive law of the state in which the incident occurred applies "retroactively" to pending actions nor offers any guidance as to how the language "shall apply" should be interpreted in the context of a pending action. It is ambiguous as to whether section 11 applies to pending actions as of August 20, 1988, or whether, as the majority concludes, it applies to such actions as of their inception. In the absence of explicit Congressional instruction, I believe that the principles underlying the anti-retroactivity presumption make the former interpretation far more appropriate than the sweeping approach to retroactivity enunciated by the majority.

Third, this interpretation eliminates the strained historical fiction on which the majority opinion, by necessity, must be based, thereby providing a more rational analytic framework for effectuating Congress's intent and leading to a more equitable result. For the most part, the practical effect of the retroactivity provision is the same under either interpretation; in either case, rulings made prior to the passage of the Amendments Act on the basis of substantive law which no longer applies can be modified to conform to the new governing law of the case. Causes of action recognized in the filing state but not in the forum state can be dismissed. Rules of evidence, burdens of proof, and jury instructions all can be adjusted to accommodate the law of the forum. Under the majority's interpretation, these adjustments would be made by adopting a fiction that Pennsylvania law applied from the beginning and then relitigating the entire case accordingly. Under my interpretation, these adjustments can be made simply by applying Pennsylvania law after August 20, 1988 to motions, new or renewed, brought by the parties. In other words, after August 20, 1988, a party can move to dismiss a claim that no longer has any legal basis, renew a summary judgment motion that failed previously but might now succeed, or seek reconsideration of prior evidentiary rulings that do not stand up under the new governing law. Thus, while the two interpretations require different procedures for implementation, the ultimate effect on the parties is, for the most part, the same in both cases.

In the statute of limitations context, however, the difference in theory between the two interpretations translates into a crucial difference in outcome. The historical fiction on which the majority's theory is premised forces the majority to conclude that plaintiffs' action, although filed within the Mississippi statute of limitations, is now barred by the Pennsylvania statute of limitations--an inequity which I believe contravenes Congress's intent and which my theory avoids. Statutes of limitations are uniquely concerned with a specific point in time: the date on which the complaint was filed. While a defendant can raise the statute of limitations as a defense at any time during the course of a lawsuit, the relevant question for the court is always whether, at the time the case was filed, the applicable statute of limitations was satisfied. Because the majority reasons that section 20 requires extending Pennsylvania

law back in time to the inception of plaintiffs' action, it concludes that Pennsylvania's statute of limitations applied--and was violated--at the time the suit was filed. However, at the time it was filed, plaintiffs' lawsuit was not a public liability action. As a result, I conclude that it was governed at the time it was filed by Mississippi, not Pennsylvania, law. Although the substantive law of Pennsylvania governs plaintiffs' case from August 20, 1988 forward, the statute of limitations was satisfied or violated back in 1985, when Mississippi law applied. At that time, under the applicable law, I conclude that it was satisfied.

Finally, the interpretation I endorse conforms with the "settled policy" of federal courts to "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question," Gomez v. United States, 490 U.S. 858, 864 (1989), by eliminating the constitutional questions of due process raised by the majority's interpretation. If the Amendments Act applies to pending actions from August 20, 1988 forward, then there is no issue as to whether the Act violates the due process rights of plaintiffs to pending lawsuits, because the Pennsylvania statute of limitations does not apply to deprive plaintiffs of their cause of action.

As a result, I conclude that the retroactivity provision of the Amendments Act does not rewrite history as applied to pending actions, but rather operates by changing the ground rules midway through the game, altering the legal status and governing law of pending actions from the time of its enactment forward.

The majority proffers that it agrees with this interpretation, and denies that its interpretation of section 20 engenders a rewriting of history. Nevertheless, while conceding that the definition of public liability action, the choice-of-law provision, and the original jurisdiction provision apply to pending cases from August 20, 1988 forward, the majority concludes that plaintiffs' lawsuit was filed in violation of Pennsylvania's two-year statute of limitations. Both positions cannot be correct. In effect, the Amendments Act drew a bright line down the middle of this lawsuit on August 20, 1988, dividing the case into two distinct parts. Prior to August 20, 1988, the suit was generic and Mississippi law governed; since that date, it has been a public liability action and Pennsylvania law governs. I think it logically inconsistent to hold, as the majority does, that plaintiffs' suit was not a public liability action when it was filed, and yet conclude that it was required at the time it was filed to satisfy the Pennsylvania statute of limitations--a statute that only applies to this action in its public liability incarnation. Either plaintiffs' lawsuit was a public liability action when it was filed, subject to federal jurisdiction and Pennsylvania's statute of limitations, or it was not.

Therefore, in my view it is the majority, and not I, who seeks to treat the statute of limitations differently from all other "substantive rules for decision" of Pennsylvania law. While concluding that Pennsylvania substantive law operates on

plaintiffs' lawsuit from August 20, 1988 forward, the majority carves out an exception for the statute of limitations, allowing it to reach back in time--crossing the imaginary line drawn by the Amendments Act--to operate on the suit on the day it was filed.  This treatment of the statute of limitations clashes directly with the majority's overarching theory of the case.  Statutes of limitations, as discussed above, can only be violated (or satisfied) at one specific point in time--the day on which the suit was filed--notwithstanding that such violations can be called to the attention of the court at any point during the pendency of a lawsuit.  Under the majority's own interpretation of section 20, this case was not a public liability action when it was filed, and Pennsylvania law did not apply.  As a result, the majority's treatment of the statute of limitations cannot be reconciled with its interpretation of the meaning and effect of the Amendments Act.

The majority seeks to justify this illogical result in terms of congressional intent.  It is not at all clear, however, that Congress intended the choice-of-law provision of the Amendments Act to encompass statutes of limitations.  While it is well established that statutes of limitations are characterized as substantive law for purposes of the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), see Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109 (1945), this does not mean that they are considered substantive in other contexts.  Indeed, in holding that statutes of limitations are substantive for purposes of the Erie doctrine, such that federal courts sitting in diversity must apply state statutes of limitations, the Supreme Court confined its analysis narrowly to the context of Erie:

> It is therefore immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions in any use of those terms unrelated to the specific issue before us.  Erie R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology.  It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts.  In essence, the intent of that decision was to ensure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if

tried in a State court.

Guaranty Trust Co. of New York, 326 U.S. at 109 (emphasis added).

In this case, the majority opinion's conclusion that "the statute of limitations is a substantive rule of decision," Majority Opinion, typescript at 9, is based entirely on cases holding that statutes of limitations are substantive rather than procedural for purposes of Erie. The characterization of statutes of limitations as substantive for Erie purposes, however, was not based on an assessment of their procedural or substantive nature in the abstract but rather on their impact on the federalism concerns that Erie's rough procedural/substantive distinction was intended to address. SeeGuaranty Trust Co., 326 U.S. at 109.

In this case, by contrast, there is no federalism concern at issue and no balance of power between federal and state courts to be maintained. The cause of action is federal, and the only question is whether Congress intended the term "substantive rules for decision" to include statutes of limitation. The legislative history of the Amendments Act is silent on this point; indeed, there is nothing to indicate that Congress even considered the status of statutes of limitations under that Act, much less intended to include them as substantive rules of decision. Moreover, a review of Pennsylvania case law makes clear that the courts of Pennsylvania "generally treat statutes of limitations as 'procedural.'" AAMCO Transmissions, Inc. v. Harris, 759 F. Supp. 1141, 1143-44 (E.D. Pa. 1991)(footnotes omitted); Boyle v. State Farm Mutual Automobile Ins. Co., 456 A.2d 156, 162 (1983); Altoona Area Sch. Dist. v. Campbell, 618 A.2d 1129, 1134 (1992). This strikes me as a strong indication that the courts of Pennsylvania would not consider the phrase "substantive rules for decision" to include Pennsylvania's statutes of limitations. For these reasons, I do not think that congressional intent with respect to statutes of limitations is clear enough to sustain the majority's logically inconsistent conclusion that plaintiffs' suit is time-barred. See Majority Op., typescript at 10 ("Congress could have exempted statutes of limitations from retroactive application, but it did not.").

Nor is there any evidence in the legislative history or elsewhere that Congress intended the sweeping retroactivity that the majority endorses. On the contrary, the legislative history indicates that the Amendments Act was based on the lessons of claims resulting from the TMI accident:

> The experience with claims following the TMI accident demonstrates the advantages of the ability to consolidate claims after the nuclear incident. Attorneys representing both plaintiffs and defendants in the TMI litigation testified . . . that the ability to consolidate claims in federal court

> would greatly benefit the process
> for determining compensation for
> claimants . . . . The availability
> of the provisions for consolidation
> of claims in the event of any
> nuclear incident . . . would avoid
> the inefficiencies resulting from
> duplicative determinations of
> similar issues in multiple
> jurisdictions that may occur in the
> absence of consolidation.

S. Rep. No. 218, 100th Cong., 2d Sess. 13, reprinted in 1988 U.S. Cong. & Admin. News 1476, 1488; In re TMI Litig. Cases Consol. II, 940 F.2d 832, 853 n.18 (3d Cir. 1991)(stating that Congress' decision to enact the Amendments Act was based on the lessons of litigation resulting from the TMI accident). This indicates to me that Congress contemplated providing a mechanism for consolidating TMI cases to facilitate their continued litigation. This forward-looking approach evidenced by the legislative history is wholly inconsistent with a congressional desire to extinguish those suits on technical grounds.

Because I conclude that retroactive application of the choice-of-law provision means simply that Pennsylvania substantive law applies to and governs the instant litigation from August 20, 1988 forward, I respectfully dissent from the majority's far-reaching and overly broad interpretation of section 20 and from its conclusion that Pennsylvania's two-year statute of limitations reaches back in time to bar plaintiffs' suit. Accordingly, I would reverse.