530 A.2d 1004

Charles Werner, an incompetent, by his parent and natural guardian Odette Werner, and Odette Werner in her own right, Appellants *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Appellee.

Argued June 9, 1987, before President Judge CRUM-LISH, JR., and Judge COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Gregory G. Stagliano,* with him, *Barbara W. Thompson, Eckell, Sparks, Levy, Auerbach & Monte,* for appellant.

*Celeste Yvonne Lamb,* Deputy Attorney General, with her, *LeRoy S. Zimmerman,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 3, 1987:

Charles Werner and his mother, Odette Werner, plaintiffs below, appeal a Delaware County Common Pleas Court order denying their motion for a new trial following a jury verdict in favor of the Commonwealth's Department of Public Welfare (DPW). We affirm.

Charles Werner, a psychiatric patient at Haverford State Hospital, committed self-mutilation by removing his eye with a blunt stick several hours after he was re-

leased from prescribed leather restraints. The Werners' complaint alleged essentially that the DPW-administered hospital was negligent in treating and supervising Charles. The trial judge instructed the jury that, with respect to the decision to release the restraints, the hospital may be liable only if it is found grossly negligent. As to other allegations of inadequate treatment, the trial judge instructed the jury to apply a simple negligence standard. The trial judge made evidentiary rulings which are also at issue here.

We will first address the Werners' contention that the trial judge erred in instructing the jury to apply a gross negligence standard.[1]

The court applied a gross negligence standard pursuant to Section 114 of the Mental Health Procedures Act[2] (MHPA), which states:

**Immunity from civil and criminal liability**

(a) *In the absence of willful misconduct or gross negligence,* a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, *or that the restraint upon such person be otherwise reduced,* or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, *shall not be civilly or*

---

[1] The denial of a new trial will not be reversed unless the appellate court finds that the jury instructions have caused prejudicial error. *McCay v. Philadelphia Electric Co.,* 447 Pa. 490, 291 A.2d 759 (1972).

[2] Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. §7114.

*criminally liable for such decision or for any of
its consequences.*

50 P.S. §7114(a) (emphasis added).

The Werners initially argue that Section 114 is inapplicable because their action is one for general "malpractice," which is not specifically enumerated in the statute as being immunized from simple negligence. The Werners also contend that Section 114 was intended to apply only when the action is commenced by a *third party* who is harmed by the patient, not when the action is commenced by the *patient* himself. We disagree.

This Court may not disregard the clear and unambiguous language of a statute under the pretext of pursuing its spirit. 1 Pa. C. S. §1921(b). Section 114 clearly and unambiguously provides that, in the absence of willful misconduct or gross negligence, an "authorized person who participates in a decision [to reduce a patient's restraints] shall not be civilly or criminally liable for such decision *or for any of its consequences.*" 50 P.S. §7114(a) (emphasis added). We initially conclude that merely categorizing the complaint's allegations as "malpractice" cannot negate the statute's clear and unambiguous language immunizing decisions to reduce restraints.[3] Also, the words "or for any of its consequences" indicate that the legislature intended no distinction between situations where the decision results in harm to the patient and harm to a third party. We decline to create this distinction.

The Werners argue that this construction abridges their right to sue for malpractice, in violation of Section

---

[3] We note that the trial judge carefully instructed the jury to limit the gross negligence standard to the specific decision to release Charles' restraints. This instruction was clearly consistent with Section 114 of the Act.

113 of the MHPA,[4] which provides that a patient is entitled to all other rights under the laws of the Commonwealth in addition to those provided for in the act. However, if there is any contradiction between these two provisions, the more specific shall prevail and be construed as an exception to the general. 1 Pa. C. S. §1933. Here, we must follow Section 114's specific legislative mandate to immunize certain decisions which affect a mental patient.

We also reject the Werners' argument that Section 114 immunizes only the individual *persons* named therein and thus has no application to the health care *entity*. Since the asserted liability of DPW is predicated upon a theory of respondeat superior,[5] the defenses and immunities available to the individual decision-makers must be available to DPW.

We, therefore, conclude that the trial court did not err in instructing the jury to apply the standards provided in *Section 114 of the MHPA*.

The Werners next contend that the trial judge erred in allowing DPW's expert witness to testify because DPW did not disclose the witness' identity and opinion within the trial judge's established discovery deadline. Although the Werners did in fact receive this information six days before trial, they argue that the trial judge should have precluded the testimony pursuant to Pa. R.C.P. Nos. 4003.5(b) and 4019(i).

---

[4] 50 P.S. §7113.

[5] The parties entered into a stipulation that DPW would be liable on a respondeat superior theory for any negligent acts which may be established on the part of the Hospital's health care employees or servants.

Pa. R.C.P. No. 4003.5 provides:

### Rule 4003.5. Discovery of Expert Testimony.
### Trial Preparation Material

. . . .

(b) If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Rule 4019(i) provides for essentially the same sanction and differs only in that it applies to all witnesses undisclosed during discovery. These rules do not require the trial court to preclude the testimony. Rather, the court "must balance the facts and circumstances of each case to determine the prejudice to each party." *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 573, 517 A.2d 1270, 1273 (1986).

We agree with the trial court that, under the circumstances, the Werners have failed to demonstrate prejudice. The Werners claim prejudice in that they did not have the benefit of DPW's expert report prior to videotaping their own expert's testimony. However, although the Werners were aware for some time that DPW intended to produce an expert witness, they did not move to compel DPW to provide the expert report before the videotaping session. *See Dion v. Graduate Hospital of University of Pennsylvania,* 360 Pa. Superior Ct. 416, 520 A.2d 876 (1987) (in practice, sanctions for noncompliance with discovery requests are generally not imposed until there has been a refusal to comply with a court order compelling compliance). We also note that DPW disclosed its witness' identity two days

before the videotaping session and further indicated that the expert report would be available several days thereafter. If the Werners believed that late receipt of the report was prejudicial, counsel could have requested a continuance of trial or arranged to produce their expert live at trial. We conclude that, in view of the circumstances and prejudices to the parties, the trial court did not err in allowing DPW's expert testimony.[6]

The Werners next contend that the trial judge erred in excluding evidence that Charles was placed in full leather restraints immediately *after* the incident. Again, we disagree. Evidence of post-incident remedial measures is admissible to show that such measures were available alternatives prior to the incident. *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971) rev'd on other grounds, *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980). However, such evidence is inadmissible to show antecedent negligence. *Id.* In the instant case, it is undisputed that full leather restraints were an available alternative prior to the incident and therefore the only relevance of such evidence would be to prove DPW's antecedent negligence. We therefore find no error in the trial court's exclusion of this evidence.

We also reject the Werners' contention that the trial court erred in allowing DPW to file late responses to requests for admissions. Pa. R.C.P. No. 4014(b) provides that a requested admission is deemed admitted unless,

[6] In a separate contention, the Werners argue that prejudicial surprise resulted when the Werners' counsel elicited an unexpected response from DPW's expert when asked what was the maximum effective dosage of a certain prescribed drug. The witness agreed, consistent with other experts' evidence, that the recommended maximum dosage was seventy-five to eighty milligrams per day. The Werners claim that prejudicial surprise resulted when the witness further testified that research institutes have employed up to 130 milligrams. We disagree and find no reversible error. This testimony clearly did not contradict the other evidence so as to prejudice the Werners' case.

within thirty days after service of the request, the party to whom the request is directed serves upon the requesting party a verified answer or an objection. However, the court may permit withdrawal or amendment of the admission "when the presentation of the merits will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Pa. R.C.P. No. 4014(d). Herein, the matter sought to be admitted concerned whether Charles used a plastic knife or a popsicle stick to enucleate his eye. We agree with the trial court that the Werners have failed to demonstrate prejudice as a result of DPW's untimely denial that the instrumentality was a plastic knife. This factual issue was irrelevant to the Werners' theory of liability which focused on the issue of whether DPW negligently decided to release Charles' restraints. Moreover, we note that the Werners had notice of DPW's responses prior to the videotaping of their expert witness and thus had ample opportunity to prepare a rebuttal on this issue if they deemed it necessary.

We also reject the Werners' contention that the trial judge erred in allowing an improper hypothetical question by DPW's counsel on cross-examination of the Werners' expert witness. At trial, the Werners attempted to show that DPW was negligent in not ordering "one-on-one" supervision of Charles. On cross-examination of the Werners' expert witness, the posed hypothetical required the witness to assume that one-on-one supervision was "in effect" being employed by the hospital staff notwithstanding the lack of documented orders to do so. The Werners argue that there is no record evidence to support this assumption.

Hypothetical questions are proper if the jury could be justified in finding the hypothesized facts from rec-

ord evidence. *SEPTA v. Workmen's Compensation Appeal Board (Saxon)*, 82 Pa. Commonwealth Ct. 590, 477 A.2d 9 (1984). There is no reversible error where the difference in the actual facts and the assumed facts is "not so great as to render the question improper." *Id.* at 594, 477 A.2d at 12 (citation omitted). In the instant case, Frank Force, a psychiatric aide, testified that he was told to "keep an eye on" Charles and that prior to the incident Charles was only twenty steps ahead of Force, and out of Force's view for only five seconds. This testimony is sufficient to justify a jury's finding that "one-on-one" supervision was "in effect" being employed, notwithstanding the absence of formal written orders to do so. Any deviation from the actual testimony is not so great as to constitute reversible error.

Based upon the foregoing; we hold that the trial court committed no error of law or abuse of discretion. We therefore affirm.

ORDER

The order of the Delaware County Common Pleas Court, No. 84-8830 dated February 27, 1986, is affirmed.

Judge COLINS dissents.