696 A.2d 1175

**Anne L. ALLEN a/k/a Nancy Allen, an incompetent, by Walter E. Allen and Anne M. Allen, her Guardians, and Walter E. Allen: and Anne M. Allen in their own right, Appellees,**

v.

**MONTGOMERY HOSPITAL and Paul R. Casey, Jr., M.D., Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1996.

Decided June 17, 1997.

</div>

300

Mary Coyne Pugh, William E. Pugh, IV, Norristown, for Paul R. Casey, Jr., M.D.

Pamela G. Shuman, Terry S. Hyman, Harrisburg, for Amicus–Pa. Trial Lawyers Assoc.

John V. Hasson, Richard T. Abell, Fort Washington, for Anne L. Allen, et al. in No. 0036 E.D. Appeal Dkt. 1996.

L. Rostaing Tharaud, Philadelphia, for Montgomery Hospital.

Roland Morris, David L. Kwass, Philadelphia, for Amicus–Hosp. Assoc. of Pa.

John V. Hasson, Fort Washington, for Anne L. Allen and Walter Allen in No. 0037 E.D. Appeal Dkt. 1996.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

CASTILLE, Justice.

## OPINION OF THE COURT

The sole issue on appeal is whether the immunity provisions of the Mental Health Procedures Act, 50 P.S. § 7101, *et seq.*, apply to hospitals and doctors who provide medical care to a mentally ill patient pursuant to a contract with a mental hospital. Because we hold that the immunity provisions of the Mental Health Procedures Act apply to doctors and hospitals in such a situation, we reverse the order of the Superior Court and reinstate the order of the trial court entering judgment in favor of appellants on the verdict of the jury.

The relevant facts are that on August 11, 1980, appellee Anne L. Allen ("the patient") was admitted for in-patient treatment at Norristown State Hospital for treatment of mental retardation and psychosis after she suffered an adverse reaction to her medication that made it difficult for her

parents to control her behavior. On November 30, 1982, the patient was transferred to Montgomery Hospital for treatment of certain physical ailments pursuant to a contractual agreement through which Montgomery Hospital would provide medical treatment for mental patients from Norristown State Hospital. Dr. Paul Casey, Jr., was the patient's attending physician at Montgomery Hospital. The initial diagnosis was that the patient was suffering from dehydration and a fever. The patient was admitted to a private room on the orthopedic floor of Montgomery Hospital.

Suspecting the patient's physical problems were caused by a reaction to medication prescribed for her mental problems, Dr. Casey removed the patient from all but one of her prescribed psychotropic drugs. While hospitalized at Montgomery Hospital, the patient was kept in a posey vest restraint.[1] A posey restraint had also been employed to secure the patient at Norristown State Hospital in the weeks prior to her transfer to Montgomery Hospital. The patient's physical condition improved following her treatment and she was scheduled to be returned to Norristown State Hospital on December 6, 1982. However, on December 5, 1982 at 2:00 a.m., a nurse at Montgomery Hospital discovered the patient hanging about six (6) inches above the floor between the side-rails and her bed with the posey restraint around her neck. The patient had managed to free one arm from the restraint and had apparently attempted to get out of the bed. The nurse called for aid in freeing the patient from the restraint and administered cardio-pulmonary resuscitation. The patient survived but tragically suffered permanent brain damage due to lack of oxygen.

On November 11, 1984, the patient's parents filed a complaint against Montgomery Hospital and Dr. Casey (collectively, the "appellants") for medical negligence.[2] Appellants filed

1. A posey restraint is a vest-like restraint which is tied to the patient's bed in order to keep the patient from falling out of bed, but which allows the patient to move his or her arms and to sit up in bed.

2. Several distributors of posey restraints were also initially named as defendants, but summary judgment was entered in their favor prior to

a Motion in Limine requesting that the immunity provisions of the Mental Health Procedures Act (MHPA), 50 P.S. § 7101, *et seq.*, be applied to the proceedings. Specifically, appellants claimed that they were immune from liability under Section 114 of the MHPA, 50 P.S. § 7114, unless their actions in treating the patient were found to constitute willful misconduct or gross negligence. The trial court granted the motion and certified the issue for interlocutory appeal to the Superior Court. However, the Superior Court declined to accept the appeal, and this Court denied *allocatur.* 530 Pa. 659, 609 A.2d 167 (1992).

The case then proceeded to trial, and the jury was instructed, pursuant to the MHPA, that a verdict could only be entered in favor of appellees if the jury found that appellants' actions in treating the patient amounted to gross negligence.[3] The jury returned a verdict in favor of appellants because it found that neither of appellants were grossly negligent in their treatment of the patient. Appellees filed post-trial motions which were denied. Appellees then filed a timely appeal. On December 19, 1995, a three judge panel of the Superior Court, with one judge dissenting, reversed and remanded the matter for a new trial because it held that the trial court erred in determining that the immunity provisions of the MHPA applied.[4] On May 29, 1996, we granted *allocatur* in order to

trial. Norristown State Hospital was joined as an additional defendant by Montgomery Hospital, but non-suit was entered in favor of Norristown State Hospital following the close of appellees' case.

3. Appellees' complaint never alleged that appellants' actions amounted to willful misconduct. Thus, the trial court did not mention willful misconduct when instructing the jury on the immunity provision in Section 114 of the MHPA.

4. The majority of the Superior Court reached its decision by recognizing that the immunity provisions of the MHPA have only been applied to psychiatrists and no other medical care providers. Also, the majority found that the immunity provisions of the MHPA have never been applied to anyone, including psychiatrists, for treating a mentally ill patient for a physical ailment. Moreover, the majority found that psychiatrists only have received immunity under the MHPA when the issue involves the level of supervision or restraint necessary to protect the patient. Therefore, the majority reasoned that appellants here were not entitled to immunity because they provided care for a physical

decide if the immunity provision found in Section 114 of the MHPA, 50 P.S. § 7114, applies to physicians and doctors and hospitals who provide medical care for a physical ailment to a mental patient pursuant to a contract with a mental health care facility.

Appellees argue that Section 114 of the MHPA does not provide appellants with immunity because it only applies to treatment which is specifically directed to treating the patient's mental illness and not to treatment for physical ailments. Appellants, however, argue that the immunity provision of the MHPA applies to hospitals and doctors who provide medical care for physical ailments to mental patients pursuant to a contract with a mental health facility. Our determination of which interpretation is correct depends upon our analysis of the controlling statutory language.

When reviewing a statute, we are guided by the Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). When ascertaining the legislative intent, it is presumed that the General Assembly did not intend a result that is absurd, impossible of execution or unreasonable. Also, if possible, the statute must be construed to give effect to all of its provisions. *Id.* Moreover, the provisions of a statute must be liberally interpreted to effect its object and to promote justice. 1 Pa.C.S. § 1928(b) (providing that statutes which do not fall within the classes of statutes established in subsection (b), none of which apply here, shall be liberally construed).[5]

ailment rather than a mental illness and the claims raised did not involve the restraints used or supervision supplied to the patient.

The dissent, however, would have applied the immunity provisions of the MHPA. In doing so, the dissent argued that mental illness is often manifested from physical problems. Also, the patient's physical ailments and mental illness were both treated by appellants. Moreover, the dissent believed that the proper focus in analyzing such an issue should be on whether the treatment administered to the mentally ill patient falls within the scope of conduct for which immunity is granted.

5. The Superior Court has strictly construed certain provisions of the MHPA which concern the deprivation of a liberty interest or a privacy right. *See In re S.C.,* 280 Pa.Super. 539, 421 A.2d 853 (1980) (involun-

In 1976, the General Assembly enacted the MHPA to provide procedures and treatment for the mentally ill in this Commonwealth. The policy of the MHPA is set forth in Section 102, which provides, in pertinent part:

> [I]t is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected. The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others. Treatment on a voluntary basis shall be preferred to involuntary treatment; and in every case, the least restrictions consistent with adequate treatment shall be employed.

50 P.S. § 7102.

 ■ Consistent with this policy to insure adequate treatment to mentally ill individuals in the least restrictive environment, the MHPA provides civil and criminal immunity for decisions regarding the treatment of the patient absent willful misconduct and/or gross negligence. *Farago v. Sacred Heart General Hospital,* 522 Pa. 410, 414, 562 A.2d 300, 302 (1989). The relevant statutory language regarding this immunity is found in Section 114 of the MHPA and provides, in pertinent part, that:

> [I]n the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a *physician,* a peace officer, *or any other authorized person who participates in a decision that a person be examined or treated under this act,* or that the person be discharged, or placed

tary commitment pursuant to 50 P.S. § 7303(b) implicated a liberty interest requiring strict construction of that section); *In the Interest of Roy,* 423 Pa.Super. 183, 620 A.2d 1172 (1993), *appeal denied,* 536 Pa. 644, 639 A.2d 30 (1994) (50 P.S. § 7111, which relates to confidentiality of patient's records, must be strictly construed). This Court, however, employed a liberal construction in *Farago v. Sacred Heart General Hospital,* 522 Pa. 410, 562 A.2d 300 (1989), when determining that hospitals were a person covered by the immunity provision of Section 114 of the MHPA.

under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be reduced, or a county administrator or person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, *shall not be civilly or criminally liable for such decision or for any of its consequences.*

50 P.S. § 7114(a) (emphasis added). Montgomery Hospital is a person within the meaning of this section. *Farago, supra* at 419, 562 A.2d at 303 (hospital qualifies as person subject to immunity under Section 114 of the MHPA). Thus, if appellants participated in the decision to provide treatment to the patient under the MHPA, the immunity provision of Section 114 of the MHPA applies to them.

Section 114 of the MHPA does not specifically define what is encompassed within the term "treated." However, definitions of "treatment" and "adequate treatment" can be found elsewhere in the MHPA. In particular, the MHPA provides as follows:

Adequate treatment means a course of treatment designed and administered to *alleviate a person's pain and distress* and to maximize the probability of his recovery from mental illness. It shall be provided to all persons in treatment who are subject to this act. It may include inpatient treatment, partial hospitalization, or outpatient treatment. *Adequate inpatient treatment shall include such* accommodations, diet, heat, light, sanitary facilities, clothing recreation, education and *medical care as are necessary to maintain decent, safe and healthful living conditions.*

Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and *to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery.*

50 P.S. § 7104 (Provision for Treatment) (emphasis added).

■ The above provisions demonstrate a clear public policy by the General Assembly to make adequate treatment available to mentally ill patients with the least restrictions to their

person. Moreover, as is evident from the General Assembly's definition of "adequate treatment" and "treatment" in the MHPA, the General Assembly did not intend to limit treatment to that only directly related to a patient's mental illness. Instead, treatment is given a broader meaning in the MHPA to include medical care coincident to mental health care. Medical care is commonly understood to include the prevention or alleviation of both physical and mental illness. *See* 1 Pa.C.S. § 1903(a) (courts must construe statutory terms not defined in statute in accordance with their common usage). Also, treatment under the MHPA broadly includes "care and other services that supplement treatment" in order to promote the recovery of the patient from mental illness. Therefore, applying the rules of statutory construction to the immunity provision of Section 114 of the MHPA, we conclude that the General Assembly decided to ameliorate certain risks by granting limited immunity to doctors and hospitals who have undertaken the treatment of the mentally ill, including treatment for physical ailments pursuant to a contract with a mental health facility to provide such treatment.

Policy reasons also support this interpretation of the immunity provision in Section 114 of the MHPA. If the provision were interpreted narrowly such as urged by appellees so that it only applied to treatment specifically directed at a mental illness, it could reduce or eliminate the willingness of doctors or hospitals to provide needed medical care to a mentally ill patient who is referred by a mental hospital for medical treatment. Even if doctors or hospitals still provided treatment for physical ailments in such a situation, it could lead such providers of medical care to minimize their risks by placing the mentally ill patients in a more restrictive environment than is necessary or adopting other precautionary measures which would increase the costs of the medical care provided to the mentally ill. Such a narrow interpretation would clearly contravene the purposes of the MHPA to provide adequate treatment to the mentally ill with the least

restrictive physical restraints.[6]

Applying this interpretation to the present case, the patient was admitted to Montgomery Hospital in 1982 pursuant to an agreement with Norristown State Hospital. At that time, the patient was mentally ill and was in acute need of medical care. The care provided by appellants was medical care designed to "facilitate the recovery of a person from mental illness" under 50 P.S. § 7104. Because appellants provided such treatment, the trial court correctly instructed the jury that appellants were entitled to invoke the immunity provision of Section 114 of the MHPA unless their actions in treating the patient constituted gross negligence.[7]

Accordingly, the order of the Superior Court is reversed and the order of the trial court entering judgment for appellants on the verdict of the jury is reinstated.

**6.** We note that the dissenting opinion agrees with the narrow position taken by the appellees. However, like the appellees, the dissenting opinion ignores the policy behind the MHPA. Also, the dissenting opinion ignores the language of the MHPA which extends limited immunity to doctors and hospitals who provide "treatment" to mentally ill patients and "treatment" within the plain language of the MHPA is given a broad meaning to include medical care for physical ailments as well as mental health care.

**7.** Appellees, in their appellate brief, argue that the broad interpretation of the immunity provision of Section 114 of the MHPA which we take today would unconstitutionally deny equal protection to the mentally ill by denying them redress in the courts. It is presumed that the General Assembly does not intend to violate the United States or Pennsylvania Constitutions and any doubts are to be resolved in favor of finding the statute constitutional. 1 Pa.C.S. § 1922(3); *Jenkins v. Hospital of the Medical College of Pennsylvania,* 535 Pa. 252, 262, 634 A.2d 1099, 1104 (1993). Equal protection does not prohibit a state from classifying persons differently and treating the classes differently. *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984).

Appellees' brief fails to demonstrate how Section 114 of the MHPA is unconstitutional. The mentally ill require more specialized or intensive care than the non-mentally ill. In order to protect the mentally ill and provide them with adequate treatment in the least restrictive manner, the General Assembly enacted the MHPA. Absent willful misconduct or gross negligence, the General Assembly provided immunity to health care providers of the mentally ill in order to ensure that this important government interest is met. Thus, the limited restriction on the right to sue in the MHPA bears a reasonable relation to a substantial government interest.

NIGRO, Justice, dissenting.

I disagree with the Majority's determination that the immunity provisions of the Mental Health and Procedures Act ("the Act"), 50 P.S. § 7101, *et seq.*, applies to the hospital and doctor in this case. I believe the Act applies only to treatment which is specifically directed toward aiding a patient's mental illness and not to treatment of physical ailments. As I would affirm the Superior Court's decision to award a new trial, I dissent.

The appellate courts have not applied the Act's limited immunity to a health care provider other than a psychiatrist. As the Act itself states, its purpose is to provide treatment for the mentally ill, either voluntarily or involuntarily, in the least restrictive environment. *See* 50 P.S. § 7102. Further, the Act has not been held to apply to any health care provider treating a mentally ill patient for a physical illness.

In *Farago v. Sacred Heart General Hospital*, 522 Pa. 410, 562 A.2d 300 (1989), a patient with a history of mental illness was admitted to the psychiatric unit of a hospital for treatment of a chronic schizophrenic condition. After evaluation and consultation with a psychiatrist, the patient was placed on an open ward as it was determined that she did not need special observation. The patient maintained she was raped by another patient in the bathroom adjoining the ward and filed suit against the hospital, alleging negligent supervision and protection. This Court stated that "(o)ne of the purposes of [the Act] is to provide limited protection from civil and criminal liability to mental health personnel and their employees in rendering treatment in this unscientific and inexact field." *Id.* at 417, 562 A.2d at 304. Finding the Act's immunity provisions applicable, we stated that the decision by the hospital to allow the patient to remain on an open psychiatric ward was a mental health treatment decision consistent with Act's mandate to impose the least restrictive alternatives to provide the patient with adequate treatment. *Id.* at 418, 562 A.2d at 304.

Similarly, in *Werner v. Dept. of Public Welfare*, 109 Pa. Commw. 134, 530 A.2d 1004 (1987), a psychiatric patient at a state hospital committed self-mutilation by removing his eye

with a blunt stick just hours after he was released from leather restraints. Suit was filed alleging negligent treatment and supervision. At trial, the judge instructed the jury that with respect to the decision to remove the restraint, the hospital could be found liable if it was grossly negligent. However, the judge instructed the jury to apply a negligence standard to all other allegations of inadequate treatment. The Commonwealth Court affirmed that decision, concluding that the decision to reduce the restraints was expressly enumerated in the Act. *Id.*

Conversely, in *McNamara v. Schleifer Ambulance Service*, 383 Pa.Super. 100, 556 A.2d 448 (1989), the Superior Court found the immunity provision of the Act did not apply to insulate an ambulance company's conduct while transporting a mentally ill patient to the hospital. The patient's seatbelt was unfastened by an ambulance attendant who wanted to reposition himself near another patient. After the seatbelt was unfastened, the mentally ill patient opened the rear doors of the ambulance and jumped out. In reversing the trial court's decision to apply the Act's immunity, the Superior Court reasoned the decision to release the patient was not a decision within the realm of treatment, care, diagnosis or rehabilitation as contemplated by the legislature. *Id.* at 103, 556 A.2d at 449.

Based upon the foregoing, our appellate courts have consistently interpreted the Act's immunity provision to apply only where a physician trained in the mental health field treats a patient's mental illness. In both *Farago* and *Werner*, a psychiatrist made treatment decisions concerning the removal of restraints or supervision of a mentally ill patient. Moreover, those patients were admitted to the psychiatric wards of the hospitals in order to receive treatment for their mental illness.

Instantly, the Superior Court reached the correct decision since Appellants never established that the patient was being treated for her mental illness or that her treatment differed from a non-mentally ill patient with similar physical ailments. When she was admitted to Montgomery hospital, the patient was being treated by an internist for dehydration and internal

medical problems in order to facilitate recovery of other physical ailments. She was admitted to the orthopedic floor of Montgomery Hospital, not the psychiatric wing, and no evidence of any consultation with a psychiatrist is found in the record. Further, as the Superior Court recognized, there is nothing in the record to indicate that the posey device "was used to treat anything other than a physical condition." *Allen v. Montgomery Hospital* at 167, 668 A.2d at 570. The Superior Court also properly points to Dr. Casey's testimony that in his experience, patients were never transferred to Montgomery Hospital from Norristown State Hospital for treatment of their mental illness. *Id.*

The Mental Health and Procedures Act applies to protect only those physicians who are actively involved in the treatment of a patient's mental health. Since none of the treatment administered to the patient for her physical illnesses implicated the Act, I am in agreement with the Superior Court's conclusion that the Act's immunity provisions does not apply. I would affirm the Superior Court's decision to award a new trial.