J-A19036-24

2024 PA Super 236

| | | |
|---|---|---|
| DAVID B. TOTH, ADMINISTRATOR FOR THE ESTATE OF REBECCA A. TOTH, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : : | No. 208 MDA 2024 |
| THE CHAMBERSBURG HOSPTIAL D/B/A WELLSPAN CHAMBERSBURG HOSPITAL | : : : : | |

Appeal from the Order Entered January 17, 2024
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2022-711

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                **FILED: OCTOBER 15, 2024**

Plaintiff/Appellant, David B. Toth, administrator for the estate of Rebecca A. Toth, the deceased wife of Appellant, appeals from the January 16, 2024, order entered in the Court of Common Pleas of Franklin County which granted summary judgment in favor of Defendant/Appellee, The Chambersburg Hospital d/b/a/ WellSpan Chambersburg Hospital. We affirm.

The relevant facts and procedural history as summarized by the trial court are as follows:

> The deceased herein, Rebecca A. Toth, was admitted to the behavioral unit of the Defendant Chambersburg Hospital on or about July 23, 2020. *See Amended Complaint in Civil Action (Amended Complaint),* ¶ 38, filed August 18, 2022. She was

———————————————

* Former Justice specially assigned to the Superior Court.

previously diagnosed with dementia and was designated a "high fall risk." *Id*. [Mrs.] Toth was to be supervised by a staff member while ambulating. *See Amended Complaint*, ¶39.

Over ensuing weeks, staff of the Defendant noted behavior by Ms. Toth that increased her risk of falling. *See Amended Complaint*, ¶¶ 40-43. [Mrs.] Toth's care plan required her ambulation to be supervised throughout; however, the Defendant did not increase supervision to more than one staff person. *See Amended Complaint*, ¶ 45.

On September 21, 2020, [Mrs.] Toth was walking with a staff person. *See Amended Complaint*, ¶ 46. [Mrs.] Toth "pushed the aide out of the way and went to run." *Id.* As she did so, [Mrs.] Toth tripped and fell, injuring her hip. *Id.* [Mrs.] Toth complained of pain in her hip/pelvis; however, despite her pain and a recommendation for transfer to a trauma center, she remained in the behavioral health unit for "several days." *Amended Complaint*, ¶¶ 49-50.

[Mrs.] Toth was ultimately transferred to the York Hospital trauma center on September 25, 2020. *See Amended Complaint*, ¶ 51. She was diagnosed with a fracture of her left acetabulum and underwent surgery. *See Amended Complaint*, ¶¶ 51-2. Despite the surgery, Ms. Toth passed away on October 8, 2020, from "complications due to fall" and a "fracture of left acetabulum." *Amended Complaint*, ¶ 53.

The Plaintiff commenced a survival and wrongful death action asserting negligence against the Defendant Chambersburg Hospital and several other corporate/business entities under the WellSpan umbrella. *See Amended Complaint*. The parties subsequently stipulated to dismissal of all defendants except the Chambersburg Hospital, and amendment of the caption; accordingly, the [c]ourt granted the dismissal and amendment. *See Motion to Dismiss Defendants*, filed April 25, 2023; *see also Order* (April 26, 2023). The operative pleadings are the Plaintiff's *Amended Complaint*, filed August 18, 2022, the Defendant's *Answer and New Matter*, filed August 31, 2022, the Plaintiff's *Reply to New Matter*, filed September 19, 2022, the Plaintiff's *Amended Reply to New Matter*, filed September 21, 2022, and, critical to the instant matter, the Defendant's *Amended New Matter*, filed January 9, 2023, and the Plaintiff's *Reply* thereto, filed January 23, 2023.

On July 3, 2023, the Defendant filed the instant *Motion for Summary Judgment* (MSJ). Both parties filed briefs in support of their respective positions. *See Brief in Support of Defendant's Motion for Summary Judgment* (*Defendant's Brief*), filed July 3, 2023; Plaintiff's *Brief in Opposition* (*Plaintiff's Brief*), filed August 7, 2023; and Defendant's *Reply Brief*, filed August 2, 2023. The [c]ourt heard oral argument on October 26, 2023. At the conclusion thereof, the [c]ourt deemed the *MSJ* submitted for decision.

The Defendant seeks summary judgment on its affirmative defense of statutory immunity, as provided in 50 P.S. § 7114. *See MSJ*; *see also Amended New Matter*, ¶ 91-6. In essence, the Defendant asserts the conduct complained of does not establish "willful misconduct or gross negligence"; in the absence of such conduct, the Defendant is immune from civil liability. *See MSJ*; *see also* 50 P.S. § 7114(a).

The Plaintiff did not file a response to the *MSJ*. Rather, the Plaintiff only filed a merit brief in advance of oral argument; attached thereto were portions of the record the Plaintiff mustered in opposition to the *MSJ*. *See Plaintiff's Brief*. Pursuant to Pa.R.C.P. 1035.3(e)(1), the [c]ourt will exercise discretion to rule upon the merits of the *MSJ* in the absence of a response from the Plaintiff. We do so note the following: the Plaintiff has had a full and fair opportunity to file a response, the [c]ourt has considered the *Plaintiff's Brief* and the attachments thereto, and for purposes of the *MSJ*, the underlying facts are not particularly in dispute. However, the [c]ourt reserves the right in this decision to deem any factual assertion in the *MSJ* as admitted due to the Plaintiff's failure to file a response. *See* Pa.R.C.P. 1035.3(d).

Tr. Ct. Op. at 1-3. The issue decided by the court was whether the Mental Health Procedures Act (MPHA)[1] shields the Appellee from liability for injuries sustained by Mrs. Toth while she was in Appellee's care. In granting summary

---

[1] 50 P.S. § 7101, *et seq*.

judgment, the trial court determined that Appellee is immune from suit in this circumstance.

Appellant filed a notice of appeal on February 8, 2024, and filed his concise statement pursuant to 1925(b) on February 22, 2024. The trial court issued its 1925(a) opinion on February 26, 2024. Prior to filing his appellate brief, Appellant filed an application to stay the appeal pending the outcome of a Pennsylvania Supreme Court case[2] which he asserted would have a significant impact on the instant matter. This Court denied Appellant's request to stay the appeal on April 29, 2024. This appeal follows.

Appellant raises two issues for our review:

1. Whether the trial court erred in grant[ing] Defendant's Motion for Summary Judgment because the immunity provisions of Section 114 of the Mental Health Procedures Act, 50 P.S. § 7101, *et seq.*, do not apply to Plaintiff's claims?

2. Whether the trial court erred in granting Defendant's Motion for Summary Judgment because even if the immunity provisions of the Mental Health Procedures Act, 50 P.S. § 7101, *et seq.*, do apply to Plaintiff's claims, the record contains sufficient evidence to raise a genuine issue of fact whether Defendant's actions constitute willful misconduct or gross negligence such that they are not insulated from liability by the Section 114 immunity provisions of the MHPA?

Appellant's Br. at 4.

In reviewing a grant of summary judgment, this Court's standard of review is *de novo* and our scope of review is plenary. ***Pyeritz v.***

---

[2] ***Wunderly v. St. Luke's Hospital of Bethlehem, et al.***, Docket No. 119 MAP 2023.

***Commonwealth of Pa., State Police Dep't***, 32 A.3d 687, 692 (Pa. 2011). A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010). The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. ***Id***. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." ***Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007). An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion. ***Id.*** at 1159.

Appellee raised the affirmative defense of statutory immunity under the MHPA, and the trial court found that it applies. Appellant first argues that application of the MHPA's immunity provision to this circumstance is beyond the scope of legislative intent. Appellant's Br. at 16-17. Appellant argues that the hospital's conduct at issue does not constitute a "treatment decision" under the MHPA. Appellant's Br. at 18.

The MHPA provides that, in the absence of willful misconduct or gross negligence, facilities, physicians, and other authorized people shall be immune

from civil and criminal liability for certain decisions related to treatment under the MHPA:

> (a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a). The Pennsylvania Supreme Court has interpreted "person" to include "hospitals and other treatment facilities as well as their employees," reasoning that "denying such entities immunity would undermine the goals of the MHPA." *Dean v. Bowling Green-Brandywine*, 225 A.3d 859, 869 (Pa. 2020). Treatment is defined in the MHPA as including:

> diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery.

50 P.S. § 7104. Immunity under the MHPA includes "medical care coincident to mental health care," which is "commonly understood to include the prevention or alleviation of both physical and mental illness." *Allen v. Montgomery Hospital*, 696 A.2d 1175, 1179 (Pa. 1997).

In concluding that Appellee is entitled to immunity under the MHPA, the trial court states that Appellee is undisputably a "hospital," making it an entity

within the scope of the MHPA. Tr. Ct. Op. at 8. It is uncontested that Mrs. Toth was admitted on July 23, 2020, to the Appellee pursuant to an involuntary commitment under section 302 of the MHPA, and she remained a patient therein until her injury on September 21, 2020. *Id.*; *see* 50 P.S. § 7302.[3] Finally, the court determined that whether Mrs. Toth's activity of walking when she fell was part of the care plan for her dementia or part of some ancillary physical maintenance that she needed as a patient, it was covered as "treatment" under section 7104 of the MHPA. Tr. Ct. Op. at 8.

We agree. Appellant submits that the MHPA sets forth specific requirements for the formulation of treatment plans, including that physicians and psychologists generally make treatment decisions. Appellant's Br. at 18 (citing 50 P.S. §§ 7106-08). He claims that because the logistics/scheduling department made the decision to have a certified nursing assistant (CNA) from a different unit supervise his wife on her walk, it was not a "treatment decision" covered under the MHPA. Appellant's Br. at 20. With the presumption that staff members in the logistics department do not have a clinical background, Appellant's Br. at 21, Appellant cites dicta from **McNamara v.**

---

[3] Under section 302, "one who is severely mentally ill may be subjected to an involuntary emergency examination if one of three mandatory prerequisites is met: (1) certification of a physician; (2) warrant issued by the county administrator authorizing such examination; or (3) application by a physician or other authorized person who has personally observed actions indicating a need for an emergency application." **Leight v. Univ. of Pittsburgh Physicians**, 243 A.3d 126, 140 (Pa. 2020).

***Schleifer Ambulance Serv.***, 556 A.2d 448, 450 (Pa. Super. 1989) stating "that it was 'equally clear that the individuals who would participate in [treatment] decisions would be trained in the field of mental health.'" Appellant's Br. at 19.

Appellant's reliance on ***McNamara*** is futile. In that case, the appellant was being transported to a hospital for court-ordered involuntary treatment pursuant to the MHPA. ***McNamara***, 556 A.2d at 449. While in the ambulance to the hospital, under the supervision of an "ambulance attendant" with no medical training, the appellant was allowed to unfasten his seatbelt. ***Id***. The appellant managed to get out of his stretcher, unlock the rear doors, and jump out of the moving vehicle. ***Id***. In finding that the ambulance company did not have immunity under the MHPA for the appellant's fractured skull that resulted, a panel of this court made two relevant observations. First, the appellant was not a resident of "a facility [that] is a mental health establishment which provides for the *diagnosis, treatment, care or rehabilitation* of mentally ill persons." ***Id***. Second, the untrained attendants were not "participating in the patient's treatment." ***Id.*** at 450.

Initially, we note the clear contrast between the decision-making process in the context of a passenger in an ambulance and a resident in a mental health facility; the latter is expressly contemplated in the MHPA. Additionally, the record reflects that Mrs. Toth received mental health treatment in the form of a "[c]omprehensive multi-modal therapy plan

requiring close supervision and coordination in a psychiatric setting" and required "one-to-one" supervision while ambulating because she was a fall risk. R.R. 76a, 123a. Thus, it was part of her treatment plan that an authorized person would accompany her walks. The nature of this activity is covered under the MHPA's definition of "treatment" because it includes services that supplement or aid in recovery coincident to mental health care. 50 P.S. § 7104; **Allen, supra**. Moreover, the CNA supervising Mrs. Toth on the day of her fall had received training on fall precautions and management of patients with aggressive behaviors. R.R. 391a.

Appellant asserts that the trial court "failed to address [his] argument regarding the plain text of the MHPA and how the conduct at issue does not constitute a treatment decision for the purposes of the MPHA." Appellant's Br. at 12. The scheduling which resulted in that particular CNA accompanying Mrs. Toth the day she fell is not the relevant "decision" to be analyzed under the Act, which immunizes "authorized person[s] who participate[] in a decision that a person be examined or treated." The team of physicians who established Mrs. Toth's care plan, not the staff members in the logistics department, are the "authorized person[s] who participate[d] in the decision" that Mrs. Toth have a one-on-one supervisor for her walks—a service she was receiving at the time she ran and fell. The trial court correctly concluded that Mrs. Toth's one-on-one supervision while ambulating at the time of her fall

was "treatment" pursuant to a "decision" covered by the MHPA. Thus, the MHPA applies in this circumstance.

Appellant's second claim is that even if the MHPA applies, there is sufficient factual evidence for a reasonable jury to find willful misconduct or gross negligence such that Appellee is not entitled to immunity. Appellant's Br. at 26.

The MHPA provides that immunity is available only "in the absence of willful misconduct or gross negligence." 50 P.S. § 7114(a). This Court defined "gross negligence" in the MHPA context as follows:

> It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

*Bloom v. Dubois Reg'l Med. Ctr.*, 597 A.2d 671, 679 (Pa. Super. 1991). Our Supreme Court adopted this definition stating, "this definition is a clear, reasonable, and workable definition of gross negligence which is consistent with the purpose and intent of the [MHPA]." *Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1164 (Pa. 1997) (citing *Bloom*, 579 A.2d at 697). The *Albright* Court added, "a court may take the issue [of gross negligence] from a jury, and decide the issue as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence." *Id.* at 1165.

Here, both Appellee and the court below point out that Appellant's complaint alleged only ordinary, general carelessness and negligence, not "gross" negligence or willful misconduct. Appellee's Br. at 21; Tr. Ct. Op. at 10-11. Appellant responds that it was unnecessary for him to specifically characterize Appellee's actions or inactions as "willful misconduct" or "gross" negligence in his complaint because it can be inferred from the allegations in the complaint. Appellant's Br. at 27-28.

Appellant discusses the allegations in his complaint and the testimony of his expert from which he claims gross negligence could be inferred. Mrs. Toth had a well-documented history of agitation, running, and falls or near falls and required supervised ambulation as a diversionary tactic. Appellant's expert asserted that people with severe mental illnesses are easily disrupted by unfamiliar people, and the CNA supervising Mrs. Toth's walk at the time of her fall did not have any familiarity with her. Appellant's Br. at 29. Appellant further argues that his wife was raised to a weight-bearing position immediately after the fall when she should have been immobilized and assessed for injuries. He claims that this conduct of Appellee and its employees "fell well outside the standard of care[] and supports an inference of gross negligence by a jury." Appellant's Br. at 30.

The trial court stated,

> In the light most favorable to the Plaintiff, the [c]ourt finds the expert's opinions about these deviations of care indicate, at most, ordinary negligence, rather than gross negligence. Dr. Russo uses no amplifying words to modify "deviation from the

standard of care" to suggest these deviations were "flagrant" or constitute gross deviations. ***cf. Bourgeois [v. Snow Time]***, 242 A.3d [637] at 652 n. 6 (Pa. 2020) (expert report with amplifying language plausibly supported finding of gross negligence). The Defendant was providing the course of treatment the Plaintiff's expert believed appropriate, specifically 1:1 coverage while walking. That care was being provided by a person with appropriate medical training, a CNA, albeit one unfamiliar with the unit. The medical staff responding to the fall removed [Mrs.] Toth from the site of the fall using a wheelchair, to her bed, where the injury could be assessed in a non-weight bearing setting. MSJ ¶ 55. Although Plaintiff's expert opines, and the [c]ourt accepts for purposes of this ruling, these actions fell below the standard of care for a patient in [Mrs.] Toth's condition, neither the Plaintiff, nor his expert explain how these actions are flagrant or gross deviations from the standard of care. The remaining forms of negligence alleged by the Plaintiff, such as using non-medically trained schedulers[,] rise at most to ordinary negligence or indifference. On the evidence produced by the Plaintiff, the [c]ourt finds no reasonable jury could conclude the Defendant's conduct constituted a flagrant or gross deviation from the standard of care.

Tr. Ct. Op. at 11-12.

We agree. Despite Appellant not using the term "gross negligence" in his complaint, the trial court examined the allegations to determine if Appellant set forth a *prima facie* case for gross negligence therein. The trial court also summarized a number of cases analyzing "gross negligence" in the MHPA context. ***See*** Tr. Ct. Op. at 9-10. Appellant's expert's report at no point indicates that Appellee's conduct was a gross or flagrant deviation from the ordinary standard of care, and classifies as "appropriate" the decision to place a supervisor with Mrs. Toth while she ambulated. Ex. N, *Report of Dr. Russo*, at 8. We agree that no jury could find that it was grossly negligent for a CNA—who had received training on fall precautions and management of patients

with aggressive behaviors—to supervise Mrs. Toth, a patient who was prone to agitation and a fall risk.

We also find that no reasonable jury could infer gross negligence or willful misconduct from Mrs. Toth's positioning after her fall. Immediately after the fall, Mrs. Toth was lifted from the ground and placed in a wheelchair to be taken back to her room. Appellant's expert identified this as beneath the standard of care, which even when accepted as true, falls short of gross negligence under MHPA. Upon arrival to Mrs. Toth's room and for the days following, she remained in a non-weightbearing position for examination. R.R. 136a, 139a, 140a. No reasonable jury could find that this was "more egregiously deviant conduct than ordinary carelessness." ***Bloom, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2024

- 13 -