[J-87-2024] [MO: Mundy, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| KATHRYN J. WUNDERLY, EXECUTRIX OF THE ESTATE OF KENNETH E. WUNDERLY, DECEASED, | : No. 119 MAP 2023 |
| | : |
| | : Appeal from the Order of the |
| | : Superior Court at No. 2796 EDA |
| Appellant | : 2022 entered on June 14, 2023 |
| | : Affirming the Order of the Lehigh |
| | : County Court of Common Pleas, |
| v. | : Civil Division, at No. 2021-C-1562 |
| | : entered on October 14, 2022 |
| | : |
| SAINT LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A ST. LUKE'S HOSPITAL - SACRED HEART CAMPUS AND ST. LUKE'S HEALTH NETWORK, INC. D/B/A ST. LUKE'S UNIVERSITY HEALTH NETWORK AND ABOVE AND BEYOND INCORPORATED D/B/A ABOVE & BEYOND MOUNTAIN VIEW, | : ARGUED:  November 19, 2024 |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| Appellees | : |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                    **DECIDED:  October 23, 2025**

According to Section 114 ("Immunity Provision") of the Mental Health Procedures Act ("MHPA"), "[i]n the absence of willful misconduct or gross negligence … a physician … or any other authorized person who participates in a decision that a person be examined or treated under [the MHPA] … shall not be civilly or criminally liable for such decision or for any of its consequences."  50 P.S. § 7114(a).  Today, the Majority reads that provision to immunize providers for all medical care administered to a patient admitted under the MHPA, even where the care is unrelated to facilitating the patient's

recovery from mental illness. The Majority's decision is a bridge too far. Under this interpretation, a cancer patient admitted to a hospital under the MHPA is not entitled to the same standard of care for their cancer treatment as other cancer patients without a mental illness. The same can be said for a patient with a heart condition, diabetes, or any other preexisting condition, such as bedsores. In so holding, the Majority reads the MHPA as designating the mentally ill as a separate class for whom certain medical negligence claims are foreclosed simply because of their mental illness. I do not agree with that interpretation or outcome.

The Majority reads *Allen* broadly to extend Section 114's immunity to encompass any "'coincident'" treatment regardless of whether there was a link between the mental health and physical care. Majority Op. at 18 (quoting *Allen v. Montgomery Hosp.*, 696 A.2d 1175, 1179 (Pa. 1997)). But in interpreting the *Allen* Court's holding, I would read the term "coincident" (a term coined by the *Allen* Court) in accordance with the facts of that case. *See Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Lab. & Indus.*, 162 A.3d 384, 394 (Pa. 2017) ("General expressions in an opinion must be considered in the light of and cannot be dissevered from the facts of that case.") (quoting *In re Pew's Trust Estate*, 191 A.2d 399, 404 (Pa. 1963)). Allen was transferred to Montgomery Hospital because she was suffering from dehydration and fever. *Allen*, 696 A.2d at 1176. Believing that her "physical problems were caused by a reaction to medication prescribed for her mental problems," Montgomery Hospital took Allen off "all but one of her prescribed psychotropic drugs." *Id*. It also placed her in a posey restraint "to keep [her] from falling out of bed." *Id*. at 1176 n.1. Later, Allen was found hanging six inches above the floor with the posey restraint around her neck causing her to suffer permanent brain damage.

*Id*. at 1176.  When her parents brought negligence claims against the hospital, the hospital argued that the Immunity Provision shielded it from liability.

On appeal, this Court explained that the Immunity Provision extends to "medical care coincident to mental health care" including "the prevention or alleviation of both physical and mental illness" and "'care and other services that supplement treatment'" to promote the patient's recovery from mental illness.  *Id*. at 1179 (quoting 50 P.S. § 7104). The *Allen* Court observed that Montgomery Hospital's treatment constituted "medical care designed to 'facilitate the recovery of a person from mental illness.'"  *Id*. (quoting 50 P.S. § 7104).  Because Montgomery Hospital provided such treatment, it was entitled to invoke the Immunity Provision.  *Id*.

Read on its facts, *Allen* stands for the proposition that a hospital is immunized for supplemental care that arises from a patient's treatment for mental illness.  The allegedly negligent treatment in *Allen* arose from physical ailments "caused by a reaction to medication prescribed for [Allen's] mental problems."  *Id*. at 1176.  Thus, Montgomery Hospital's treatment was "medical care designed to 'facilitate the recovery of a person from mental illness'" because it sought to address symptoms arising from Allen's medication for her mental illness.  *Id*. at 1179 (quoting 50 P.S. § 7104).  Despite *Allen*'s capacious language, that Court's holding should be read only as applied to the facts of the case.  *See* Randy J. Kozel, *The Scope of Precedent*, 113 MICH. L. REV. 179, 188 (2014) ("precedential effect attaches to the application of a targeted legal rule to a discrete set of facts that were actually presented in the underlying dispute").

The pleadings in this case do nothing to clarify whether St. Luke's Hospital ("St. Luke's") treatment choice for Kenneth Wunderly's ("Decedent") pre-existing bedsores

was in any way related to facilitating his recovery from mental illness or to treatment of his mental illness, and the complaint contains no such allegation.[1]  From the pleadings, St. Luke's treatment of Decedent's ulcers cannot be characterized as medical care "coincident" to his mental health care because it did not facilitate his recovery from his underlying mental illness, as is required by the MHPA.  *See* 50 P.S. § 7104.  Unlike in *Allen* where it was established that Allen's medical condition was caused by mental health treatment, there is nothing in the pleadings to suggest that the same is true here.[2]

In this case, we address for the first time, the availability of the immunity defense to providers of services to persons suffering from medical conditions existing at the time the decision is made to treat them for an unrelated mental health issue.  Neither *Farago* nor *Allen* presented this question so neither of those cases could speak to this discrete application of the Immunity Provision of the MHPA.  Although the Majority passingly claims that this is a case of first impression, it makes no effort to reckon with the unique factual circumstances this case presents.  *See* Majority Op. at 15.  Here, Decedent's bedsores arose prior to and independent from St. Luke's mental health treatment.  In

---

[1]  We are reviewing the Superior Court's affirmance of the trial court's grant of a motion for judgment on the pleadings.  Such motion shall be granted only where "there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law." *Stilp v. Com., Gen. Assembly*, 929 A.2d 660, 661 n.3 (Pa. Commw. 2007), *aff'd*, 974 A.2d 491 (Pa. 2009).  An appellate court reviews the grant of judgment on the pleadings for "whether the trial court committed an error of law or whether unresolved questions of material fact remained." *Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 105 A.3d 1188, 1192 (Pa. 2014).

[2]  *Allen* rests upon this Court's decision in *Farago v. Sacred Heart General Hospital*, 562 A.2d 300 (Pa. 1989), where we held in a case of first impression that the MHPA immunizes "mental health personnel and their employers [when] rendering treatment." *Farago*, 562 A.2d at 304.  There, as in *Allen*, the challenged treatment was part of the provider's mental health treatment plan.  Today, for the first time, the Majority extends immunity to care that in no way relates to treatment for the patient's mental illness.

*Allen*, "the patient's physical problems were caused by a reaction to medication prescribed for her mental problems." *Allen*, 696 A.2d at 1176. In its analysis, the Majority provides only a rote recitation of the rule announced in *Allen* and a conclusory statement that it applies to this case. In doing so, the Majority fails to engage with the meaningful factual differences in this case.

Moreover, in applying the broad language unnecessary to *Allen*'s disposition, the Majority extends the Immunity Provision to **all** medical care provided to a patient admitted under the MHPA.[3] This stretches Section 114's immunity beyond the bounds of reason.[4] A mentally ill patient or her family cannot be made to choose between treatment for her

---

[3] Though the Majority purports to cabin the reach of its decision, it announces no limiting principle. Majority Op. at 22. It claims that "[t]rial courts will" decide "whether treatment is coincident based on the specific facts of a case." *Id.* at 20 n.8. Curiously, however, the Majority fails to cite to any parameters or offer a definition of what constitutes coincident treatment. Assuming the Majority is using the dictionary definition of coincident, it means "occupying the same space or time." *Coincident*, MERIAM-WEBSTER'S ONLINE DICTIONARY. Accordingly, the Majority holds that the Immunity Provision applies to any treatment "occupying the same space or time" as treatment for mental healthcare. Cancer treatment for a patient who receives mental health treatment at the same time or in the same space is, therefore, coincident treatment. The patient's mental health and cancer treatment are both covered by the Immunity Provision under the Majority's construction of the MHPA. To my mind, that is a faithful articulation of the Majority's overbroad rule. To the extent we feel compelled to use the word "coincident," which appears nowhere in the MHPA, it must be defined as coincident medical treatment intended to facilitate the patient's recovery from mental illness, as is provided in the MHPA. 50 P.S. § 7104.

[4] If the General Assembly intended such broad immunity, it could have achieved that goal by simply stating that physicians and other authorized personnel are relieved of their normal duty of care when treating the mentally ill. But it did not say that. Instead, it repeatedly cabined the immunity's scope to "decision[s] that a person be examined or treated under [the MHPA], or … any of [their] consequences." 50 P.S. § 7114(a); *see also id.* § 7104 (defining treatment as "diagnosis, evaluation, therapy, or rehabilitation needed to … facilitate the recovery of a person from mental illness"); *id.* (defining adequate treatment as "a course of treatment designed … to maximize the probability of [the patient's] recovery from mental illness").

mental illness and the expectation of the ordinary duty of care in providing treatment for an unrelated physical condition. *Allen* does not demand such an expansive interpretation and certainly nothing in *Allen* or the MHPA suggests that this was the intent of the General Assembly in enacting the MHPA. Reading *Allen* based on its facts, this Court held only that Section 114 immunizes providers from liability for treatment of a medical condition when it arises from a patient's treatment that facilitates the patient's recovery from mental illness.

This Court has previously explained that Section 114 "is limited by its own terms." *Dean v. Bowling Green-Brandywine*, 225 A.3d 859, 871 (Pa. 2020). The immunity extends only to the **decision** to treat a person with a mental illness and "any of its consequences." 50 P.S. § 7114(a). Injury or death resulting from the breach of the duty of care owed to a patient for treatment of a pre-existing medical condition when admitted for mental health treatment is not necessarily a consequence of the decision to treat a mentally ill patient. Consistent with this limitation, Section 114 provides immunity for treatment decisions that aim to "'facilitate the recovery of a person from mental illness'" and the consequences of those decisions. *Dean*, 225 A.3d at 870 (quoting *Allen*, 696 A.2d at 1179 (quoting 50 P.S. § 7104)).

Contrary to the Majority's suggestion, I am not "advanc[ing] [a] direct link theory rejected in *Allen*." Majority Op. at 20 n.8. My interpretation aligns with the *Dean* Court's understanding that the Immunity Provision "might apply to treatment that does not specifically pertain to 'mental illness' if the treatment 'facilitates the recovery' from mental illness." *Dean*, 225 A.3d at 871 (quoting *Allen*, 696 A.2d at 1179). My analysis stops there because, as framed by the pleadings in this case, a question of fact exists as to

whether St. Luke's treatment choice for Decedent's bedsores was rendered to facilitate his recovery from mental illness and thus, whether the immunity provision applies.

Like the *Allen* court, the Majority relies on a broad definition of "adequate treatment" and ignores the limiting principle contained in the definition. Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and **to maximize the possibility of his recovery from mental illness**. 50 P.S. § 7104 (emphasis added). Like the definition of treatment,[5] the definition is focused on treatment designed for the recovery from mental illness.

The pleadings in this case establish only that Decedent was admitted under the MHPA for treatment of his dementia and at the time of the decision to treat him, he was suffering from a pre-existing condition, bedsores. Whether the manner in which St. Luke's addressed Decedent's pre-existing condition was necessary to facilitate his recovery from mental illness is an open question. I would reverse the Superior Court's decision, and remand to the trial court for further proceedings. I respectfully dissent.

Justices Dougherty and McCaffery join this dissenting opinion.

---

[5] "Treatment shall include diagnosis, evaluation, therapy or rehabilitation needed to alleviate pain and distress **and to facilitate the recovery of a person from mental illness** and shall also include care and other services that supplement treatment **and** aid or promote such recovery." 50 P.S. § 7104 (emphasis added)